# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| Virginia Guiette, *individually and on behalf of all others similarly situated*, | Case No.: 1:18-cv-00174<br>Judge: Timothy S. Black |
| Plaintiff,<br>v.<br>U.S. Bank National Association,<br>Defendant. | **<u>PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS</u>** |

After conducting arm's-length negotiations and engaging in a full day of mediation before the JAMS mediator Bruce Friedman, Esq., Plaintiff Virginia Guiette, and Defendant U.S. Bank National Association have reached a fair, reasonable, and adequate settlement in the above-captioned matter. Pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(c), Plaintiff brings this unopposed motion to move the Court to: (1) conditionally verify the Settlement Class, as defined in the Settlement Agreement, (2) preliminarily approve the terms of the settlement agreement, (3) approve the proposed notice plain, (4) appoint Rust Consulting as notice administrator, (5) appoint Abbas Kazerounian of Kazerouni Law Group, APC and Joshua B. Swigart of Hyde & Swigart, APC as lead class counsel, and (6) set a hearing date for final approval. This Motion has been brought by agreement of the parties and therefore complies with Local Rules 7.3(b) and 23.3.

Respectfully Submitted,

Date: November 14, 2018        By: /s/ Abbas Kazerounian
                               Abbas Kazerounian
                               **KAZEROUNI LAW GROUP**
                               245 Fischer Avenue, Unit D1
                               Costa Mesa, CA 92626
                               Telephone:   (800) 400-4808 Ext. 2
                               Facsimile:   (800) 520-5523
                               Email: ak@kazlg.com

Date: November 14, 2018        By: /s/ Joshua B. Swigart
                               Joshua B. Swigart
                               *Pro Hac Vice application pending*
                               **HYDE & SWIGART**
                               2221 Camino Del Rio South, Suite 101
                               San Diego, CA 92108
                               Telephone:   (619) 233-7770
                               Facsimile:   (619) 297-1022
                               Email: josh@westcoastlitigation.com

Date: November 14, 2018        By: /s/ W. Mark Jump
                               W. Mark Jump
                               **JUMP LEGAL GROUP**
                               2130 Arlington Avenue
                               Columbus, OH 43221
                               Telephone:   (614) 481-7216
                               Facsimile:   (866) 334-2208
                               Email: wmjump@jumplegal.com

Date: November 14, 2018        By: /s/ Anthony P. Chester
                               Anthony P. Chester
                               **HYDE & SWIGART**
                               120 South 6th Street, Suite 2050
                               Minneapolis, MN 55402
                               Telephone:   (952) 225-5333
                               Facsimile:   (800) 635-6425
                               Email: tony@westcoastlitigation.com

                               *Attorneys for Plaintiff Virginia Guiette*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

---

| | |
|---|---|
| Virginia Guiette, *individually and on behalf of all others similarly situated*, | Case No.: 1:18-cv-00174 <br> Judge: Timothy S. Black |
|         Plaintiff, <br> v. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS** |
| U.S. Bank National Association, | |
|         Defendant. | |

---

# TABLE OF CONTENTS

I.    SUMMARY ................................................................................1

II.   STATEMENT OF FACTS ......................................................3

    A.   FACTUAL BACKGROUND ...........................................3

    B.   PROCEEDINGS TO DATE ............................................4

III.  THE SETTLEMENT ...............................................................6

    A.   THE SETTLEMENT CLASS AND SUBCLASSES ....................6

        1.   The Settlement Class ...............................................6

            a.   Subclass One ...................................................6

            b.   Subclass Two ...................................................6

        2.   Subclass One and Subclass Two Membership Determination..7

    B.   SETTLEMENT PAYMENT ............................................8

    C.   MONETARY AWARD TO CLASS MEMBERS .......................8

    D.   CLASS NOTICE .....................................................10

    E.   SCOPE OF RELEASE ...............................................11

    F.   OPPORTUNITY TO OPT OUT AND OBJECT .....................12

    G.   TERMINATION OF SETTLEMENT ................................12

    H.   PAYMENT OF NOTICE AND ADMINISTRATION COSTS BY DEFENDANT...12

    I.   CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD ..13

    J.   CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES ...............................................13

    K.   CY PRES DISTRIBUTION ..........................................14

**IV.   ARGUMENT** .................................................................................... 14

    A.   Legal Standards for Preliminary Approval of a Class
        Action Settlement ....................................................................... 14

    B.   The Proposed Settlement is Fair, Reasonable, and
        Adequate and Should be Preliminarily Approved ............... 18

        1.    Liability is Highly Contested and both Sides Face
             Significant Challenges in Litigating this Case ..................... 18

        2.    Defendant's Agreement to Create a $2,670,336.00 Settlement
             Fund Provides a Fair and Substantial Benefit to the Class ...... 20

        3.    The Settlement was Reached as the Result of Arm's Length
             Negotiations, without Collusion, with a Neutral, Third-
             Party Facilitating a Mediation ............................................... 22

        4.    The Complexities, Expense, and Likely Duration of
             Litigation Lends Toward Settlement ..................................... 23

        5.    Experienced Counsel have Determined that the Settlement
             is Appropriate and Fair to the Class ..................................... 24

    C.   The Court should Preliminarily Certify the Class for
        the Purposes of Settlement ....................................................... 25

        1.    The Proposed Class is Numerous .......................................... 26

        2.    The Commonality Requirement is Satisfied Because
             Common Questions of Law and Fact Exist .......................... 27

        3.    The Typicality Requirement is Met ....................................... 28

        4.    The Adequacy Requirement is Satisfied ............................... 29

        5.    Common Questions Predominate, Sufficient to Certify a
             Class for Settlement Purposes ............................................... 30

        6.    Class Treatment for Settlement Purposes is Superior to
             Individual Resolutions ........................................................... 31

D.    **THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE** ......34

E.    **THE COURT SHOULD APPOINT THE CLASS REPRESENTATIVE AND CLASS COUNSEL**.................................................................................39

F.    **THE COURT SHOULD APPOINT RUST CONSULTING, INC. AS THE CLAIMS ADMINISTRATOR** ...............................................................40

G.    **A FINAL APPROVAL HEARING SHOULD BE SCHEDULED** .................40

**V.    CONCLUSION** ............................................................................40

# TABLE OF AUTHORITIES

***Federal Cases***

*ACA Int'l v. Fed. Commc'ns Comm'n,*

    885 F.3d 687 (D.C. Cir. 2018).................................................................18-19

*Amchem Prods. Inc. v. Woodward,*

    21 U.S. 591 (1997)..........................................................................................33

*Ammons v. Ally Fin., Inc.,*

    No. 3:17-CV-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018) ............19

*Amos v. PPG Indus., Inc.,*

    No. 2:05-CV-70, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015)....................20

*Bacon v. Honda of Am. Mfg.,*

    205 F.R.D. 466 (6th Cir. 2004).......................................................................31

*Bayat v. Bank of the West,*

    No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ...........32

*Bittinger v. Tecumseh Prods. Co.,*

    123 F.3d 877 (6th Cir. 1997) ..........................................................................27

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,*

    137 S. Ct. 1773 (2017) .....................................................................................4

*Carson v. Am. Brands,*

    450 U.S. 79 (1981)..........................................................................................18

*Chesher v. Neyer,*

    215 F.R.D. 544 (S.D. Ohio 2003)...................................................................28

*Connectivity Sys. Inc. v. Nat'l City Bank*,

    No. 08-cv-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ........................16

*Couser v. Comenity Bank*,

    125 F. Supp. 3d 1034 (S.D. Cal. 2015) ........................................................31

*Daffin v. Ford Motor Co.*,

    458 F.3d 549 (6th Cir. 2006) .......................................................................26

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,

    431 U.S. 395 (1977).....................................................................................29

*Eisen v. Carlisle & Jacqueline*,

    417 U.S. 156 (1974) ....................................................................................34

*Elkins v. Equitable Life Ins. of Iowa*,

    No. Civ A96-296-Civ-T-17B, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998)....33

*Franks v. Kroger Co.*,

    649 F.2d 1216 (6th Cir. 1981).....................................................................15

*Gary v. TrueBlue, Inc.*,

    No. 17-CV-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018) ................19

*Gehrich v. Chase Bank United States*,

    316 F.R.D. 215 (N.D. Ill. 2016) ............................................................31, 32

*Granada Inv. v. DWG Corp.*,

    962 F.2d 1203 (6th Cir. 1992).....................................................................16

*Griffin v. Flagstar Bancorp, Inc.*,

    No. 10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ................28

*Hainey v. Parrott,*

    617 F. Supp. 2d 668 (S.D. Ohio 2007) ........................................................35

*Hartless v. Clorox Co.,*

    2011 U.S. Dist. LEXIS 5427 (S.D. Cal. Jan. 20, 2011) ...............................38

*Hyland Homservices of Am., Inc.,*

    No. 3:05-CV-612-R, 2009 WL 2525587 (W.D. Ky. Aug. 17, 2009) ..............15

*In re Am. Med. Sys. Inc.,*

    75 F.3d 1069 (6th Cir. 1996) ................................................................26, 27

*In re Auto. Parts Antitrust Litig.,*

    No. 12-MD-02311, 2016 WL 8200513 (E.D. Mich. Oct. 7, 2016) ................37

*In re Broadwing, Inc. ERISA Litig.,*

    252 F.R.D. 369 (S.D. Ohio 2006).........................................16, 18, 20, 24, 25

*In re Capital One Tel. Consumer Prot. Act Litig.,*

    80 F. Supp. 3d 781 (N.D. Ill. 2015)............................................................32

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.,*

    248 F.R.D. 483 (E.D. Mich. 2008) .............................................16, 22, 23, 24

*In re Gen. Motors Trucks,*

    55 F.3d 768 (3d Cir. 1995).........................................................................30

*In re General Tire & Rubber Co. Sec. Litig.,*

    726 F.2d 1075 (6th Cir. 1984)....................................................................18

*In re Global Crossing Sec. and ERISA Litig.,*

    225 F.R.D. 436 (E.D. Pa. 2000)..................................................................21

*In re Nationwide Fin. Servs. Litig.,*

    No. 08-cv-249, 2009 U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009)...16

*In re Omnivision Tech., Inc.,*

    559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ...............................................21

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*

    148 F.3d 283(3d Cir. 1998)..............................................................................24

*In re Telectronics Pacing Sys., Inc.,*

    137 F. Supp. 2d 985 (S.D. Ohio 2001) ....................................................22, 24

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.,*

    722 F.3d 838 (6th Cir. 2013) .........................................................................26

*In re Wireless Facilities, Inc. Sec. Litig. II,*

    253 F.R.D. 607 (S.D. Cal. 2008) .............................................................22, 25

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.,*

    497 F.3d 615 (6th Cir. 2007) .........................................................................29

*Kolinek v. Walgreen Co.,*

    311 F.R.D. 483 (N.D. Ill. 2015)....................................................................32

*Ledford ex rel. Epperson v. Colbert,*

    No. 10-cv-706, 2012 WL 1207211 (S.D. Ohio Apr. 11, 2012).......................27

*Levell v. Monsanto Research Corp.,*

    191 F.R.D. 543 (S.D. Ohio 2000)..................................................................24

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*

    244 F.3d 1152 (9th Cir. 2001)........................................................................30

*Mahoney v. TT of Pine Ridge, Inc.,*

    No. 17-80029-CIV, 2017 U.S. Dist. LEXIS 217470, (S.D. Fla. Nov. 17, 2017)...31

*Malta v. Fed. Home Loan Mortg. Corp.,*

    No. 10-CV-1290 BEN NLS, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013).......32

*Malta v. Fed. Home Loan Mortg. Corp.,*

    No. 10-CV-1290-BEN-NLS, 2013 WL 12095060 (S.D. Cal. June 21, 2013)...32

*Marshall v. Holiday Magic, Inc.,*

    550 F.2d 1173 (9th Cir. 1977)...........................................................................37

*Mayborg v. City of St. Bernard,*

    No. 04-cv-00249, 2007 WL 3047235 (S.D. Ohio Oct. 18, 2007) ..................15

*Melito v. Am. Eagle Outfitters, Inc.,*

    No. 14-CV-2440, 2017 U.S. Dist. LEXIS 146343 (S.D. N.Y. Sept. 11, 2017)...31

*Michel v. WM Healthcare Sols., Inc.,*

    No. 1:10-CV-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014)................26, 31

*Mullane v. Central Hanover Bank & Trust Co.,*

    339 U.S. 306 (1950) ......................................................................................34

*National Rural Tele. Coop. v. DIRECTV, Inc.,*

    221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................21

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*

    688 F.2d 615 (9th Cir. 1982) ........................................................................17

*Otte v. Life Ins. Co. of N. Am.,*

    275 F.R.D. 50 (D. Mass. 2011).......................................................................30

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.,*

    323 F. Supp. 364 (E.D. Pa. 1970)....................................................................17

*Rankin v. Rots,*

    No. 02-CV-71045, 2006 WL 1876538 (E.D. Mich. June 27, 2006)...............24

*Rikos v. Procter & Gamble Co.,*

    799 F.3d 497 (6th Cir. 2015) ........................................................................28

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.,*

    279 F.R.D. 442 (N.D. Ohio 2012) ................................................................31

*Silbaugh v. Viking Magazine Servs.,*

    278 F.R.D. 389 (N.D. Ohio 2012) ..........................................................27, 28

*Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.,*

    No. 13-cv-00489, 2015 WL 1976398 (W.D. Ky. May 5, 2015).....................16

*Strube v. Am. Equity Inv. Life Ins. Co.,*

    226 F.R.D. 688 (M.D. Fla. 2005) .................................................................33

*Torrisi v. Tucson Electric Power Co.,*

    8 F.3d 1370 (9th Cir. 1993) ..........................................................................37

*UAW v. General Motors Corp.,*

    No. 05-cv-73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006).......18, 20, 25

*Valentino v. Carter-Wallace,*

    97 F.3d 1227 (9th Cir. 1996) ........................................................................31

*Wess v. Storey,*

    No. 08-cv-623, 2011 WL 1463609 (S.D. Ohio April 14, 2011).....................25

*West Va. v. Chas. Pfizer & Co.,*

    440 F.2d 1079 (2d Cir. 1971).........................................................17

*Wilkins v. HSBC Bank Nevada, N.A.,*

    No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)...........................32

*Williams v. Vukovich,*

    720 F.2d 909 (6th Cir. 1983) ...............................................16, 18

*Wilson v. Airborne, Inc.,*

    2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008).........................38

*Zincser v. Accufix Research Institute, Inc.,*

    253 F.3d 1188 (9th Cir. 2001).........................................................30

## ***Federal Statutes***

47 U.S.C. § 227 *et seq.* ..............................................................3

28 U.S.C. § 1715(b) *et seq.*..........................................................34

## ***Rules***

Fed. R. Civ. Proc. 23....................................................................14, 26

Fed. R. Civ. Proc. 23(a) ...............................................................26

Fed. R. Civ. Proc. 23(a)(1)...........................................................26

Fed. R. Civ. Proc. 23(a)(3)...........................................................28

Fed. R. Civ. Proc. 23(a)(4)...........................................................29, 30

Fed. R. Civ. Proc. 23(b)(3) .....................................3, 26, 30, 31, 32, 33, 34

Fed. R. Civ. Proc. 23(b)(3)(A)......................................................33

Fed. R. Civ. Proc. 23(b)(3)(B) ................................................................33

Fed. R. Civ. Proc. 23(b)(3)(C) ................................................................33

Fed. R. Civ. Proc. 23(b)(3)(D) ................................................................33

Fed. R. Civ. Proc. 23(c)(2) ......................................................................37

Fed. R. Civ. Proc. 23(c)(2)(B) ................................................................34

Fed. R. Civ. Proc. 23(c)(3) ......................................................................34

Fed. R. Civ. Proc. 23(e) .........................................................................14

Fed. R. Civ. Proc. 23(e)(1)(B) ................................................................34

# I.    SUMMARY

Plaintiff Virginia Guiette ("Plaintiff"), submits this application for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation"), which is unopposed by Defendant U.S. Bank National Association ("U.S. Bank" or "Defendant").[1]  The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement") filed as Exhibit A to the Declaration of Abbas Kazerounian In Support of Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Kazerounian Decl.").[2]

The proposed Settlement provides for a substantial financial benefit of $2,670,336.00 to the Class Members. Agreement §§ 2.28, 4.04; Kazerounian Decl. ¶ 3; Brooks Dep. 7:19-8:5. That Settlement resulted from informal discovery, extensive settlement negotiations, and a day-long mediation with JAMS mediator Bruce Friedman, Esq. Kazerounian Decl. ¶ 3; Swigart Decl. ¶ 5. The $2,670,336.00 Settlement Fund to be paid by U.S. Bank is an "all-in" settlement, non-reversionary, and will fund the settlement payments to Class Members. Agreement § 2.36; Kazerounian Decl. ¶¶ 3, 9; Swigart Decl. ¶ 4. It would also be used to fund (1) all Administrative Expenses, including expenses of providing Class Notice and claims administration, (2) any incentive payments that the Court may award to the Class

---

[1] Plaintiff and Defendant are collectively referred to as the "Parties."

[2] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Agreement.

Representatives, and (3) any attorneys' fees, costs or expenses that the Court may award to Class Counsel, (collectively "Settlement Costs"). Agreement §§ 2.35, 4.04. Thus, after the Settlement Costs are deducted from the Settlement Fund, the amounts remaining will be available to pay all approved claims (the "Claims Fund"). Agreement § 4.06. Each Class Member who timely submits an approved claim will receive a *pro rata* award from the Claims Fund dependent upon the total number of approved claims. Agreement §§ 4.05, 4.06. In return for payment of the Settlement Fund, Plaintiff, on behalf of the proposed Settlement Class (the "Class"), will dismiss the Litigation and the Settlement Class will unconditionally release and discharge Defendant and other related Released Parties from all claims relating to the Litigation. Agreement §§ 1.07, 13.01.

While Plaintiff is confident of a favorable determination on the merits, she has determined that the proposed Settlement provides significant benefits to the Class Members and is in the best interests of the Settlement Class. Agreement § 3.02, 3.03; Declaration of Virginia Guiette in Support of Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Guiette Decl."), ¶ 3; Kazerounian Decl., ¶¶ 11, 27; Swigart Decl. ¶ 10. Plaintiff also believes that the Settlement is appropriate because Plaintiff recognizes the expense and amount of time required to continue to pursue the Litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims. Guiette Decl., ¶ 3.

Similarly, as evidenced by the Agreement, U.S. Bank has stated that

although it has substantial and meritorious defenses to Plaintiff's claims, it has determined that it is desirable to settle the Litigation on the terms set forth in the Agreement. Agreement § 3.01.

Accordingly, Plaintiff moves the Court for an order preliminarily approving the proposed Settlement, provisionally certifying the Class pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for settlement purposes, directing dissemination of class notice, and scheduling a final approval hearing. The motion is unopposed. A proposed Preliminary Approval Order is filed as Exhibit A to the Agreement (Agreement is Exhibit 1 to the Kazerounian Decl.). The proposed Settlement satisfies all of the criteria for preliminary approval.

## II. STATEMENT OF FACTS

### A. FACTUAL BACKGROUND

In the relevant time periods, August 7, 2014, through and including December 31, 2017 for Settlement Class Members in Subclass One, and February 19, 2015, through and including December 31, 2017 for Settlement Class Members in Subclass Two,[3] U.S. Bank provided account servicing, collection and related services for its own home mortgages. Agreement §§ 2.13, 2.23, 2.31. Plaintiff alleges that in its collection efforts, U.S. Bank violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.,* ("TCPA") by calling the cellular telephones of account-holders without "prior express consent," using an

---

[3] The TCPA's statute of limitations period runs for four years preceding the filing of the original Complaint.

"automatic telephone dialing system" and/or using an "artificial or prerecorded voice." *See generally,* Compl. Plaintiff contends she and the proposed class are entitled to statutory damages pursuant to the TCPA. Compl. ¶¶ 42, 46, 48, 51. U.S. Bank has denied and continue to deny that it violated the TCPA, and denies all charges of wrongdoing or liability against it in the Action. Agreement § 3.01.

### B.   PROCEEDINGS TO DATE

Plaintiff Virginia Guiette filed the initial class action complaint in *Guiette v. U.S. Bank National Association,* Case No. 17-CV-1859-DFW-DTS on June 1, 2017 in the District of Minnesota asserting claims under the TCPA. Subsequently, on December 5, 2017, the Action was transferred to the District of Colorado and given a case number of 17-CV-2915-RM-KLM. Thereafter, on March 9, 2018, the Action was refiled in this Court (and assigned case number 18-CV-174-TSB) due to the fact that the conduct in question emanated from Defendant's call center in Cincinnati, Ohio. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017) (holding personal jurisdiction in California was improper for non-resident class member claims, but would have been proper in New York or Delaware, where the defendant had sufficient contacts). Kazerounian Decl. ¶ 2; Swigart Decl. ¶ 4.

In the Complaint, Plaintiff alleges causes of action for negligent and willful violations[4] of the TCPA, and based on those allegations, sought $500 per negligent violation, $1500 per willful violation and injunctive relief. Compl. ¶¶ 40-52.

---

[4] Under the TCPA, a violation consists of a single call made that is prohibited under the statute.

Plaintiff's claims were brought on behalf of a class of individuals who, during the Class Period, received calls on their cellular phones from U.S. Bank's division that services home mortgages that utilized automatic telephone dialing systems and/or artificial or prerecorded voice technology. Compl. ¶¶ 28-39. Defendant denies all of the allegations and liability. Agreement § 3.01.

On January 17, 2018, counsel for the Parties attended a mediation presided over by Mr. Bruce A Friedman, Esq. Kazerounian Decl. ¶ 3; Swigart Decl. ¶ 5. With Mr. Friedman's guidance, progress was made toward informally determining the parameters of the Class, the proposed Class Period, and consequently the range of potential damages. The Parties were able to reach an agreement on the amount of Settlement at that mediation session for a total of $4.00 per the 667,584 unique cellular telephone number called by U.S. Bank, for a total of $2,670,336.00. Kazerounian Decl. ¶ 3; Swigart Decl. ¶ 5. The Parties were able to reach an agreement in principle on the amount of Settlement at that mediation session. Kazerounian Decl. ¶ 3; Swigart Decl. ¶ 5. Defendant U.S. Bank further agreed to assemble the information and databases to produce to Plaintiff's counsel. Kazerounian Decl. ¶ 3; Swigart Decl. ¶ 5.

The Parties then continued negotiations about the many details of the Settlement in good faith for several months and were eventually able to agree on the terms of the Settlement Agreement. Kazerounian Decl., ¶ 4; Swigart Decl. ¶ 6. Plaintiff then conducted confirmatory discovery, confirming the total number of cell phones called and also confirming the efficacy of the processes and

methodology used by U.S. Bank to assemble the data. *See* Brooks Dep.; Kazerounian Decl., ¶¶ 13. Shortly thereafter, the Parties filed this motion.

## III. THE SETTLEMENT

### A. THE SETTLEMENT CLASS

#### 1. The Settlement Class

The "Class" or "Class Members" means the persons in the following definitions of Subclass One and Subclass Two in the Agreement:

##### a. Subclass One

Subclass One consists of all users or subscribers to a wireless or cellular service within the United States who used or subscribed to a phone number to which U.S. Bank made or initiated one or more Calls in connection with a Residential Mortgage Loan using any automated dialing technology or artificial or prerecorded voice technology during the Class Period August 7, 2014 through December 31, 2017. Agreement § 2.33.

##### b. Subclass Two

Subclass Two consists of all users or subscribers to a wireless or cellular service within the United States who used or subscribed to a phone number to which U.S. Bank made or initiated one or more Calls in connection with a Home Equity Loan using any automated dialing technology or artificial or prerecorded voice technology during the Class Period February 19, 2015 though December 31, 2017. Agreement § 2.33.

#### 2. Subclass One and Subclass Two Membership Determination

6

The Settlement Class is made up of the two Subclasses. Based on the two Subclass definitions, Subclass One includes the residential mortgage customers called by U.S. Bank. Agreement § 2.33(a). Subclass Two includes the home equity loan customers called by U.S. Bank. Agreement § 2.33(b). Based upon the Notice Database prepared by U.S. Bank using the information in its records, the total number of Class Members in the Settlement Class that will be mailed personal direct mail Notice is estimated to be 664,760 persons. Brooks Dep. 15:8-17:6; Agreement § 7.02. That breaks down to 653,957 in Subclass One and 10,749 in Subclass Two. Brooks Dep. 15:8-16:4; Kazerounian Decl. ¶ 13. U.S. Bank possesses mailing addresses for approximately 99.6% of Settlement Class Members.[5]

The processes and methodology used to arrive at the number of Class Members were verified by confirmatory discovery. *See generally,* Brooks Dep.; Kazerounian Decl., ¶ 13; Agreement § 4.01. Thus, U.S. Bank has determined from its records the numbers called by their residential home mortgage division (Subclass One) and their home equity loan division (Subclass Two). Brooks Dep. 7:22-8:14; Kazerounian Decl. ¶ 13. If a person was called on their cell phone and they are identified on U.S. Bank's Notice Database, that is all that is needed for membership in the Settlement Class. Agreement §§ 4.03, 4.06. And all that is needed for a Class Member to file a claim is to make a call to a toll-free telephone

---

[5] This number was arrived at by dividing the number of associated addresses in the Notice Database by the total number of Settlement Class Members.

number, submit a claim online or mail in a claim form stating the person's (1) name; (2) current address; (3) cellular phone number(s) called; (4) certification that the claimant was called by U.S. Bank on the identified cellular number(s); (5) certification that the claimant was called by U.S. Bank in connection with either a Residential Mortgage Loan and/or Home Equity Loan; (6) where applicable, and if known, the identification code of the Mail Notice; and (7) contact telephone number. Agreement § 9.02. The Approved Claim will be paid a *pro rata* portion of the Settlement Fund after deducting the Settlement Costs. Agreement § 4.06.

### B. SETTLEMENT PAYMENT

Under the Settlement, U.S. Bank agrees to establish a Settlement Fund in an amount of $2,670,336.00. Agreement §§ 2.28, 4.04.[6] This Settlement Fund will include funds to pay the Settlement Costs. Agreement §§ 2.35, 4.04. That maximum payment is not subject to the number of claims made and approved ("Approved Claims") and is not a reversionary fund.

### C. MONETARY AWARD TO CLASS MEMBERS

All of the approximately 667,584 persons associated with both Subclasses are Settlement Class members, and all are entitled to a *pro rata* award for their claims, the amount of which depends only upon the amount of Approved Claims, the Settlement Costs and the resulting Claims Fund. All approved claims will be

---

[6] This number was produced by multiplying the class size (667,584) by the monetary consideration ($4.00) provided in the Agreement.

awarded an equal share of the Claims Fund. Agreement §§ 4.06, 7.04(d). And the Class Members have a long time period in which to file claims, 90 days from the date the direct mail Notice postcards are mailed. Agreement §§ 2.08, 2.09.

The Claims process is as simple as Class Counsel can make it. All a Class Member has to do in order to make a claim is to provide their Claim Identification Number that is on their direct mail Notice postcard, or—if they do not have a Claim identification number from a postcard—their (1) name; (2) current address; (3) cellular phone number(s) called; (4) email address; (5) certification that the claimant was called by U.S. Bank on the identified cellular number(s); (6) certification that the claimant was called by U.S. Bank in connection with either a Residential Mortgage Loan and/or Home Equity Loan; and (7) contact telephone number. Agreement § 9.02. Thus, even if U.S. Bank did not happen to send a post card to a person with a Claim Identification Number, that person can still file a claim by providing only their cell phone number. Settlement Class Members can contact the Claims Administrator by either (a) calling their toll-free number; (b) contacting them online at the Settlement website; or (c) submitting by mail a completed Claim Form downloaded from the Settlement website. Agreement § 9.02. Kazerounian Decl., §§ 16-20. However, a Class Member can only file one claim, regardless of the number of calls received, but if a person happens to be in both Subclass One and Subclass Two, they may file a claim for payment as a member of both Subclasses. Agreement § 4.03.

### D. CLASS NOTICE

The Agreement provides that notice of the proposed Settlement will be mailed by the proposed Claims Administrator, Rust Consulting, Inc. to Class Members by direct mail postcard notice ("Direct Mail Notice") to persons in both Subclasses. Agreement §§ 7.01, 7.02, 8.02; *see* Exhibit C-2 for that proposed Direct Mail Notice postcard. That Direct Mail Notice postcard summarizes the Settlement, instructs how to make a claim, opt out or object, and directs the recipient to a toll-free telephone number and the Settlement Website www.USbankTCPAsettlement.com to learn the details of the Settlement.

U.S. Bank will provide to the Claims Administrator their records listing the last known addresses for the 667,584 Class Members ("Notice Database") in order to mail the Direct Mail Notice. Agreement §§ 2.28, 7.02.[7] Because these accounts are related to both home mortgages and home equity loans where the bank is to be kept informed of the location of the customer, these addresses are believed to have a high percentage of accuracy. Kazerounian Decl., ¶¶ 13, 14. However, the Claims Administrator may check each address against the U. S. Post Office's National Change of Address Database to confirm the address prior to the initial mailing and use best efforts to update any address for whom the mail is returned as undeliverable and re-mail the Notice. Agreement § 8.02. Kazerounian Decl. ¶¶ 16, 17, 20.

---

[7] As noted above, U.S. Bank represents there is a small number of persons (less than 1%) for whom there are no names and addresses, and are only identified by the cell phone number called. Those persons will be provided the best notice practicable, through the publication notice and through the internet. If those persons make a claim, and provide a cell phone number that matches one in the Notice Database, they will be permitted to file a claim. Agreement § 8.05.

In addition, to provide further notice to the Class Members, including those few for whom there are no names and addresses, the Parties intend to publish a press release upon Preliminary Approval announcing that a Settlement has been reached, that the Court has given Preliminary Approval to the Settlement and directing interested persons to the Settlement Website. Agreement § 8.04, Exhibit E; Kazerounian Decl. ¶ 17. That press release will allow search engines to more easily locate the Settlement information for persons searching the internet about the Settlement. Kazerounian Decl. ¶ 18.

Lastly, a Settlement Website will be established to answer questions about the Settlement, to allow the filing of claims and to allow anyone to review the important documents relating to the Settlement, including but not limited to the Settlement Agreement and Exhibits, and when filed, the Court's Orders, briefs requesting attorneys' fees and costs, and the motion for Final Approval of the Settlement. In addition, the Settlement Website and Toll-Free Number will permit Class Members to obtain information and a copy of the Agreement. Agreement §§ 8.03, 8.04; Kazerounian Decl. ¶ 18.

E.    SCOPE OF RELEASE

The scope of the release by all Class Members (other than those who exclude themselves from the Settlement) tracks the scope of Plaintiff's allegations in the original complaint relating to the prohibition against "the use of an 'automatic dialing system' or an 'artificial or prerecorded voice'" as used in the

TCPA. Agreement § 13.01.  The release also covers known and unknown claims, including California Civil Code Section 1542 claims.  Agreement §§ 13.02, 13.03.

### F.  OPPORTUNITY TO OPT OUT AND OBJECT

Under the terms of the proposed Settlement, Class Members will have the right to opt out of the Settlement or to object to its terms. Agreement §§ 10.01, 10.02. The deadline for doing both is ninety (90) days from the Settlement Notice Date. Agreement §§ 2.25, 2.26. Class members will be informed of these rights through the Direct Mail Notice, the Settlement Website, the Publication Notice, and information available by calling the Toll-Free Number. Agreement, Exhibits C-1, C-2.

### G.  TERMINATION OF SETTLEMENT

If more than 1,000 of the Class members submit valid Opt-Out Requests, then Defendant shall have, in its sole discretion, the right to terminate the Settlement.  Agreement §§ 15.01, 15.02.  If the Settlement is not finally approved by the Court or is materially modified in the course of approval proceedings, it may be void.  Agreement §§ 15.01 through 15.03.

### H.  PAYMENT OF NOTICE AND ADMINISTRATIVE COSTS BY DEFENDANT

The Agreement provides that the estimated costs of Direct Mail Notice and establishing the claims administration procedures are to be deposited by U.S Bank into the Settlement Fund Account administered by the Claims Administrator, Rust Consulting, Inc., within thirty (30) days after entry of the Preliminary Approval order.  Agreement § 7.03.  The funds necessary to fund the Settlement, including

the Approved Claims and Settlement Costs, will be paid within five days of the Effective Date and the amounts not paid for in advance will be billed by itemized invoices and shall be billed and paid monthly. Agreement §§ 7.03 through 7.04.

### I. CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD

The proposed Settlement contemplates that Class Counsel will request incentive award to Plaintiff in the amount of up to $5,000.00, subject to Court approval. Agreement § 5.03. U.S. Bank has agreed not to oppose a request for such incentive awards in the agreed-upon aggregate amount. *Id.*

### J. CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

The proposed Settlement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees, costs, and expenses to be paid from the Settlement Fund. Agreement § 6.01; Kazerounian Decl. ¶ 26; Swigart Decl. ¶ 11. U.S. Bank has agreed not to oppose an application by Class Counsel for an award of attorneys' fees of 25% the Settlement Fund Maximum Payment, or $667,584.00. Agreement § 5.02, 5.04; Kazerounian Decl. ¶ 26; Swigart Decl. ¶ 11. Class Counsel also intends to request that other costs and expenses be paid from the Settlement Fund. Those include the costs of litigation incurred by Class Counsel. That costs request will also include payment of any costs of Notice and Claims administration (presently estimated by Rust Consulting, Inc. at $357,567.00 because Direct Mail Notice is required for approximately 664,760 individuals), but the final

cost will vary depending on a number of factors, including the number of claims submitted. Agreement, § 8.03; Janowicz Decl. ¶ 6. Class Counsel intends to also ask for costs of litigation not to exceed $25,000.00. Kazerounian Decl. ¶ 26; Swigart Decl. ¶ 11.

### K. CY PRES DISTRIBUTION

In the event there are uncashed settlement checks 210 days after the Effective Date of the Final Approval Order, those amounts remaining in the settlement account for those checks shall be provided to a *cy pres* recipient, agreed upon the Parties and approved by the Court. Agreement § 7.04(f).

## IV. ARGUMENT

### A. LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. Proc. 23(e). Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, including preliminary approval, dissemination of notice to class members, and a fairness hearing. *Manual*, §§ 21.632, 21.633, 21.634.

The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether

notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See* Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*"). The Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th ed. 2004).

In order to evaluate preliminary approval, the Court should evaluate whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, and has no obvious deficiencies, does not grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland Homservices of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009). In granting preliminary approval, the district court "bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *Mayborg v. City of St. Bernard*, No. 04-cv-00249, 2007 WL 3047235, at *3 (S.D. Ohio Oct. 18, 2007).

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *see also, Connectivity Sys. Inc. v. Nat'l City Bank*, No. 08-cv-1119, 2011 WL 292008,

at *1 (S.D. Ohio Jan. 26, 2011) ("This Court recognizes that settlement of class actions is generally favored and encouraged."); *In re Nationwide Fin. Servs. Litig.*, No. 08-cv-249, 2009 U.S. Dist. LEXIS 126962, at *3 (S.D. Ohio Aug. 18, 2009) (finding the law generally favors and encourages the settlement of class actions).

In the Sixth Circuit, the district courts consider the following factors in evaluating the fairness, adequacy and reasonableness of a proposed settlement: (1) the plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the class members; and (7) the public interest. *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.*, No. 13-cv-00489, 2015 WL 1976398, at *1-*2 (W.D. Ky. May 5, 2015). "'The district court enjoys wide discretion in assessing the weight and applicability of these factors.'" *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008) (*quoting Granada Inv. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has

been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See* James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.). Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982). Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

Preliminary approval of the settlement should be granted if there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." *Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004). Based on these standards, Plaintiff's counsel respectfully submit that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate. This request is not opposed by Defendant's counsel.

**B.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED**

**1.    Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case**

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 372 (*citing In re General Tire & Rubber Co. Sec. Litig.*, 726 F. 2d 1075, 1086 (6th Cir. 1984)). However, the Court "has no occasion to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." *Williams*, 720 F.2d at 921 (*citing Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981)). Rather, the focus is on "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *UAW v. General Motors Corp.*, No. 05-cv-73991, 2006 WL 891151, at *15 (E.D. Mich. Mar. 31, 2006) (*citing In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citations omitted)).

Plaintiff's Class Counsel is confident that a class would be certified here, should the case proceed. However, U.S. Bank vigorously contests the claims asserted by Plaintiff in this Action. While both sides strongly believe in the merits of their respective cases, there are risks to both sides in continuing the Action. Class Counsel understands there are uncertainties associated with complex class action litigation and that no one can predict the outcome of the case.

Particularly, the recent D.C. Circuit Court of Appeals decision in *ACA Int'l v.*

*Fed. Commc'ns Comm'n*, has caused a shift in the case law as to what the definition of an Automatic Telephone Dialing System ("ATDS") is under the TCPA, and consequently, what machines qualify as ATDS. 885 F.3d 687 (D.C. Cir. 2018). Courts within the Sixth Circuit have taken conflicting approaches. *See Ammons v. Ally Fin., Inc.*, No. 3:17-CV-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018) (granting in part plaintiff's motion for summary judgment and holding that *ACA International* changed nothing as it relates to the definition of an ATDS as considered by FCC Orders from 2003 and 2008); *but see Gary v. TrueBlue, Inc.*, No. 17-CV-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018) (denying plaintiff's motion for summary judgment and finding the definition of an ATDS to be restricted to the statutory text, without consideration of subsequent FCC Orders). The uncertainty for both parties is significant, given the current landscape of TCPA litigation.

If the Action were to continue, challenges would likely be made to any class certification motion made by Plaintiff, thereby placing in doubt whether a class could be certified in the Action, and additional substantive challenges to the claims might be raised. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant Settlement Fund and the deterrent effects it would have. Kazerounian Decl. ¶ 27; Swigart Decl. ¶ 12. Similarly, U.S. Bank has to recognize that if a class is certified, the potential amount of damages could be substantially higher than the Settlement agreed upon here. The Settlement avoids that

risk. Therefore, Defendant's counsel also seek to have the Court approve this Settlement. Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation as a class action for alleged violations of the TCPA.

### 2. Defendant's Agreement to Create a $2,670,336.00 Settlement Fund Provides a Fair and Substantial Benefit to the Class

"In evaluating the amount and form of relief offered in Settlement, the Court [should be] mindful of the notion that '[t]he determination of what constitutes a 'reasonable' settlement is not susceptible of a mathematical equation yielding a particularized sum. Rather . . . in any case, there is a range of reasonableness with respect to a settlement.'" *Amos v. PPG Indus., Inc.*, No. 2:05-CV-70, 2015 WL 4881459, at *3 (S.D. Ohio Aug. 13, 2015) (quoting *In re Broadwing*, 252 F.R.D. at 373). Indeed, settlements never result in the recovery of the full amount of alleged losses. *UAW*, 2006 WL 891151, at *17. Rather, a "just" settlement is generally "an arbitrary point between competing notions of reasonableness." *Id*. Here, "the court need not decide the amount of a potential recovery at trial, since the approval of the settlement should not involve a trial on the merits." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 373.

As set forth above, U.S. Bank has agreed to pay $2,670,336.00 to settle this lawsuit. After the Settlement Costs are deducted, the Class Members, which consist of the Subclass One and Subclass Two Class Members, will be paid a *pro rata*

amount for their Approved Claims, with the amount paid for each claim dependent upon the total dollar amount of all Approved Claims and the amount of Settlement Costs deducted from the Settlement Fund. Agreement §§ 4.04 through 4.06.

The settlement award that each Class Member will receive is fair, appropriate, and reasonable given the purposes of the TCPA and in light of the anticipated risk, expense, and uncertainty of continued litigation. The purpose of the TCPA is to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls. S. REP. NO. 102-178, at 6 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1973. Although the TCPA provides for statutory damages of $500 for each negligent violation and $1500 for each willful violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery).

### 3. The Settlement Was Reached As the Result of Arm's Length Negotiation, Without Collusion, with a Neutral, Third-Party Facilitating a Mediation

"Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion." *In re Delphi*, 248 F.R.D. at 501 (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1018 (S.D. Ohio 2001)); *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair."); *see also Newberg* § 11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

The proposed Settlement is the result of a series of spirited arm's length negotiations, including an all-day mediation sessions with Mr. Bruce Friedman, Esq., and subsequent confirmatory discovery. Kazerounian Decl. ¶ 3; Swigart Decl. ¶ 5. With the guidance of Mr. Friedman, the Parties were able to reach a Settlement. *See* Agreement, §§ 1.04-1.05; Kazerounian Decl. ¶ 3; Swigart Decl. ¶ 5. Informal discovery was provided to Class Counsel and later, after settlement, confirmatory discovery was conducted by the parties. *See* Brooks Dep.; Kazerounian Decl. ¶ 13. Confirmatory discovery verified the parameters of the broader Class and the number of cell phones called making up the number of Class Members. *See* Brooks Dep.; Kazerounian Decl. ¶¶ 13, 14.

With counsel for both sides also participating, there were several conference calls to go over methodology, databases used, technical details of database searches and other questions related to the parameters of the Settlement Class and how the number of cell phones called was determined. Kazerounian Decl. ¶ 12. Plaintiff's counsel are satisfied the information provided about the number of persons in the Settlement Class and the number of cell phones called is correct. Kazerounian Decl., ¶¶ 6, 9; Swigart Decl. ¶ 8. Furthermore, after reaching an agreement in principle at mediation to settle the case, the Parties' counsel engaged in extensive discussions for several more months. These discussions were necessary to work out the many details of the Settlement including: data production, total number of Class Members, the claims process and notice procedures. Kazerounian Decl., ¶ 6; Swigart Decl. ¶ 8. The time and effort spent on settlement negotiations, as well the time spent in mediation, and in developing the discovery protocol for the sampling of data in the settlement process, militate in favor of preliminary approval of the proposed Settlement, as they strongly indicate there was no collusion.

### 4. The Complexities, Expense, and Likely Duration of Litigation Lends Toward Settlement

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi*, 248 F.R.D. at 497. This is because "in general, 'most class actions are inherently complex and settlement avoids the costs, delays, and multitude

of other problems associated with them.'" *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 373 (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)). Courts in this Circuit have characterized class action trials as a "long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556 (S.D. Ohio 2000) (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998)).

Here, in the absence of settlement, the Parties would begin litigation once again in earnest. Defendant would then presumably request permission to brief and file a motion to dismiss based upon recent developments in case law as to the definition of an ATDS. *See* Supra, Section IV(B)(1). If the case were to proceed beyond a motion to dismiss, extensive class discovery would ensue, with possible discovery motions, culminating with a motion for class certification and cross motions for summary judgment—not to mention any appeals. Essentially, the Parties and the Court would face burdensome litigation without the settlement contemplated here.

### 5. Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to the Class

"In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi*, 248 F.R.D. at 498 (citing *Rankin v. Rots*, No. 02-CV-71045, 2006 WL 1876538, at *3 (E.D. Mich. June 27,

2006)); *UAW*, 2006 WL 891151, at \*18 (noting it is "well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs."); *Wess v. Storey*, No. 08-cv-623, 2011 WL 1463609, at \*6 (S.D. Ohio April 14, 2011); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 375.

The Parties are represented by counsel experienced in complex class action litigation. Class Counsel have extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection and specifically the TCPA. Kazerounian Decl. ¶¶ 29-63; Swigart Decl. ¶¶ 13-24. Similarly, Counsel for U.S. Bank has extensive experience based upon a long track record in complex class actions. They have vigorously defended U.S. Bank throughout the course of this Action. Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class Members. Kazerounian Decl. ¶¶ 27; Swigart Decl. ¶ 12. U.S. Bank's counsel will file a Statement in Support of this motion, so they also support this request for Preliminary Approval.

### C. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS FOR PURPOSES OF SETTLEMENT

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement. *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). Like any other

class certification decision, certification of a class for settlement purposes requires a determination that the requirements of Rule 23 are met. *Id.* As explained below, class certification is appropriate here because the Litigation meets the requirements of Rule 23(a) and Rule 23(b)(3); *see In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

### 1.    The Proposed Class Is Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable. "While no strict numerical test exists to define numerosity under Rule 23(a)(1), 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *In re Whirlpool Corp.*, 722 F.3d at 852. "[T]he Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement." *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996). Further, courts within the Sixth Circuit have indicated "[a] proposed class of thousands of individuals is 'substantial.'" *Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *6 (S.D. Ohio Feb. 7, 2014) (*citing Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006)).

Here, the Notice Database that will be used to provide notice to the Class contains information relating to approximately 655,873 individuals in Subclass One and approximately 11,711 individuals in Subclass Two. Brooks Dep. 8:2-8:5; Kazerounian Decl., ¶¶ 13, 14. Thus, the proposed Class is sufficiently numerous for purposes of certifying a settlement class.

## 2. The Commonality Requirement Is Satisfied Because Common Questions of Law and Fact Exist

The commonality requirement is met if there are questions of law and fact common to the class. "Commonality does not require that all class members share identical claims and facts. Rather, plaintiff must demonstrate the existence of 'a single issue common to all members of the class.'" *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 392 (N.D. Ohio 2012); *see also, Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). Importantly, "a 'perfect fit' of all issues is not required . . . .'" *Ledford ex rel. Epperson v. Colbert*, No. 10-cv-706, 2012 WL 1207211, at *4 (S.D. Ohio Apr. 11, 2012) (quoting *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996)).

Here, for purposes of settlement, the proposed Class Members' claims all stem from the same factual circumstances, specifically that calls were made or would be made by U.S. Bank to Class Members between August 7, 2014 and December 31, 2017 for Subclass One members and between February 19, 2015 and December 31, 2017 for members of Subclass Two using autodialing equipment or with a prerecorded voice message. Plaintiff's claims also present a number of questions of law that are common to all members of the Class for settlement purposes, including: (1) whether U.S. Bank negligently violated the TCPA; (2) whether U.S. Bank willfully or knowingly violated the TCPA; and (3) whether U.S. Bank had "prior express consent" for the calls. The Class Members all seek

the same remedies, including statutory damages and injunctive relief. Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class. *See Silbaugh*, 278 F.R.D. at 392.

### 3. The Typicality Requirement Is Met

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is similar to the commonality requirement and is generally met when the named plaintiffs' and class members' claims arise from the same course of conduct or are based on the same legal or remedial theory. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 509 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1493 (2016). "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003); "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar Bancorp, Inc.*, No. 10-cv-10610, 2013 WL 6511860, at *6 (E.D. Mich. Dec. 12, 2013).

The Class Representative claims she was contacted by U.S. Bank on their cellular telephones via an automatic telephone dialing system that used an artificial or prerecorded voice. *See* Compl. Accordingly, the Class Representative's claims are typical of those of the Class Members. Thus, the typicality requirement is

satisfied for certifying a settlement class.

### 4. The Adequacy Requirement Is Satisfied

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Class representatives are adequate when it "'appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel,' which usually will be the case if the representatives are 'part of the class and possess the same interest and suffer the same injury as the class members.'" *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (*quoting Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976); *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citation omitted)).

Plaintiff and Class Counsel have no conflicts of interest with other Class Members because, for purposes of the Settlement, Plaintiff's claims are typical of those of other Class Members. *See* Guiette Decl. ¶¶ 6, 7; Kazerounian Decl. ¶ 64. In addition, Guiette and Class Counsel have been prosecuting this Litigation vigorously on behalf of the Class. Kazerounian Decl. ¶¶ 6, 27; Swigart Decl. ¶¶ 8; 12. Plaintiff and Class Members share the common goal of protecting and improving consumer and privacy rights throughout the nation, and there is no conflict among them. Class Counsel have extensive experience in litigation, including the prosecution of class actions seeking to protect privacy and consumer

rights, including TCPA actions. Kazerounian Decl. ¶¶ 29-63; Swigart Decl. ¶¶ 13-24. Class Counsel are qualified and able to conduct this Litigation. Kazerounian Decl. ¶¶ 29-63; Swigart Decl. ¶¶ 13-24. Plaintiff's counsel has vigorously represented Plaintiff and the Class in negotiating the proposed Settlement. Kazerounian Decl. ¶ 14. Rule 23(a)(4) is therefore satisfied.

**5. Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes**

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Nothing about the predominance inquiry requires a plaintiff to "show that the legal and factual issues raised by the claims of each class member are identical." *Otte v. Life Ins. Co. of N. Am.*, 275 F.R.D. 50, 54 (D. Mass. 2011); *see also In re Gen. Motors Trucks*, 55 F. 3d 768, 817 (3d Cir. 1995). Instead, the inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to this question is "'the notion that the adjudication of common issues will help achieve judicial economy.'" *Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), *amended*, 273 F. 3d 1266 (9th Cir. 2001).

Numerous courts have certified TCPA classes under Rule 23(b)(3).[8] Here, the central inquiry is whether U.S. Bank violated the TCPA with calls made to Settlement Class Members. Considerations of judicial economy favor litigating a predominant common issue once in a class action instead of thousands of times in separate lawsuits. Thus, class certification in this Litigation would be appropriate.

### 6. Class Treatment for Settlement Purposes is Superior to Individual Resolutions

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims.

Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. As the Sixth Circuit has noted:

> the procedural device of a Rule 23(b)(3) class action was designed primarily to allow the vindication of rights in cases where the monetary amount at stake would not provide adequate incentive for any individual to bring a solo action. The Rule 23(b)(3) class action device was also intended to achieve the economies of time, effort and expense.

*Bacon v. Honda of Am. Mfg.*, 205 F.R.D. 466, 486 (6th Cir. 2004) (citation omitted);

*see also, Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

---

[8] *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-cv-638, 2014 U.S. Dist. LEXIS 15606, at *23-24 (S.D. Ohio Feb. 7, 2014); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012); *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV-MIDDLEBROOKS, 2017 U.S. Dist. LEXIS 217470, *6-7 (S.D. Fla. Nov. 17, 2017); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2015); *Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 226 (N.D. Ill. 2016); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440, 2017 U.S. Dist. LEXIS 146343, *23-24 (S.D. N.Y. Sept. 11, 2017).

Moreover, the settlement in this matter at $4.00 per class member is well within the market value for TCPA class settlements. *See Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *4 (S.D. Cal. Feb. 5, 2013) (preliminarily approving a settlement of $2.00 per class member); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290-BEN-NLS, 2013 WL 12095060 (S.D. Cal. June 21, 2013) (granting final approval); *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (granting final approval of a TCPA class action settlement of $2.85 per class member); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *5-6 (N.D. Ill. Feb. 27, 2015) (granting final approval of a TCPA class action settlement of $2.95 per class member); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval of a TCPA class action settlement of $2.72 per class member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (granting final approval of a TCPA class action settlement of $1.20 per class member); *Gehrich*, 316 F.R.D. at 228 (granting final approval of a TCPA class action settlement of approximately $1.00 per class member).

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that, for purposes of a settlement class, certification is appropriate. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members

of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997). "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious . . . ." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted).

Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification:

- Any class member who wishes to pursue a separate action can opt out of the Settlement.

- The Parties are unaware of any competing litigation regarding the claims at issue, as no one has filed a Notice of Related Case as often occurs with national class actions.

- The Parties agree that it would be desirable to resolve Plaintiff's claims in this forum.

Kazerounian Decl. ¶¶ 3, 6, 11, 27; Swigart Decl. ¶¶ 5, 8, 12 Agreement, §§ 1.0 –1.03.

**D.     THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE**

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable efforts." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).[9]

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal". Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice.   The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).   Fed. R. Civ. P. 23(c)(2)(B).   Courts in this

---

[9] The requisite Class Action Fairness Act ("CAFA") Notices pursuant to 28 U.S.C. Section 1715(b) shall be served within 10 days of filing this motion.  Agreement § 8.06.

Circuit have determined that direct mailings to class members' last known address coupled with publication of notice provide class members with reasonable notice. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 672-673 (S.D. Ohio 2007).

Here, the Direct Mail Notice, the Settlement Website, and the press release meet all the requirements. *See* Agreement, Exhibits C-1, C-2, and E. The Claims Administrator will mail individual Direct Mail Notices via first-class mail in postcard style form with a unique Claim Identification Number to the 667,584 Settlement Class Members: 655,873 in Subclass One and 11,711 in Subclass Two. Approximately 99.6% of those addresses are contained in the Notice Database. This initial mailing of the Direct Mail Notice shall occur within 30 days after entry of the Preliminary Approval Order. Agreement § 9.01. The notice procedure also permits searches of the U.S. Post Office National Change of Address Database by the Claims Administrator to obtain current addresses before mailing and for any notices returned by the postal service. Agreement § 8.01. If the Direct Mail Notice sent to any person is returned as undeliverable, and if a new address is obtained for such a person, a second Direct Mail Notice shall be mailed to the new address promptly. Agreement § 8.02.

In addition, the Parties have agreed to provide notice through the detailed Notice that will be posted on the Settlement Website maintained by the Claims Administrator. The Settlement Website will allow visitors to access (and print) a complete copy of the Direct Mail Notice, the Settlement Agreement, and the

Notice.  The website will also allow them to file claims online if they provide the necessary identifying information as set forth in the Notice, i.e., their Claim Identification Number.  Agreement § 8.03.

The Parties have also agreed to provide a press release and posted on the Settlement Website that same date of publication. Agreement § 8.04, Exhibit E.  A neutrally worded press release will be issued announcing the Settlement and directing persons to the Settlement Website for more information. Agreement § 9.05, Exhibit E.

Also, anyone can obtain information about the Settlement through the Toll-Free Telephone Number. Agreement § 9.07. The Claims Administrator shall maintain a Toll-Free Number throughout the ninety (90) day Claims Period and beyond, which will allow callers to request copies of the Direct Mail Notice and the Settlement Agreement. Class Members may also file claims by calling that toll – free number by providing the necessary information.  It is contemplated that all that will be necessary for the 99%+ Class Members that receive Direct Mail Notice is to provide the Claims Administrator with their unique Claim Identification Number and the claim will be filed.   Agreement § 8.02.

Furthermore, the notices will be disseminated and also posted on the website sufficiently prior to the Final Approval hearing to give Class members the opportunity to comment on the settlement, or to opt out and preserve their rights. "Federal courts will approve opt-out periods in which the deadline to opt out is

approximately 30 days." *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2016 WL 8200513, at *11 (E.D. Mich. Oct. 7, 2016) (citing *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (affirming 31-day opt-out period pursuant to dual notice plan, even though one-third of the class members received untimely notice)); *see also*, *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of a notice which was mailed 26 days before the deadline for opting out of a settlement). Here, there will be more than ninety (90) days to opt out or object, as the last day to do either is ten days beyond the 90 day deadline for filing claims. Agreement §§ 2.25, 2.26. Accordingly, the Direct Mail Notice, the Notice posted on the Settlement Website, and the press release fulfills all requirements of adequate notice and should be duly approved. *In re Auto. Parts Antitrust Litig.*, 2016 WL 8200513, at *11; Fed. R. Civ. P. 23(c)(2); *Manual, 3d*, 30.21.

Pursuant to the proposed Settlement, U.S. Bank has agreed to provide a Notice Database to the Claims Administrator and to Class Counsel. Agreement §§ 2.24, 7.02. The Notice Database is a database containing the names, current or last known mailing addresses, account numbers and cell phone numbers called that are contained in U.S. Banks's records pertaining to approximately 664,760 Settlement Class Members. Kazerounian Decl. ¶¶ 13-14.

To create the Notice Database, according to representations made throughout the Action and in more detail in confirmatory discovery, U.S. Bank reviewed its records of calls made to all persons in the two groups, residential mortgage loans

and home equity loans, then compared those lists to known cell block identifiers.

By narrowing the time periods to the respective Class Periods, U.S. Bank identified

the cell phones called and used those numbers to produce the Notice Database. As

part of that confirmatory discovery, U.S. Bank provided deposition testimony from

Andrew Brooks setting forth in detail the manner and methodology used to

determine the persons in the Class and create the Notice Database. That Notice

Database will be utilized by the Claims Administrator to provide notice to the

Class Members. Kazerounian Decl. ¶ 16. Not less than fourteen (14) days prior to

the Fairness Hearing, the Claims Administrator shall file a declaration certifying

that Notice has been properly given, and list the number of persons that request

exclusion form the Settlement. Agreement §§ 11.01.

This notice program was designed to meaningfully reach the largest possible

number of Class Members, despite its expense. The Judicial Center's Judges' Class

Action Notice and Claims Process Checklist and Plain Language Guide provides that

a 70-95% reach is acceptable for class action notice. Additionally, courts have

approved settlements in which notice was calculated to reach 75-83% of the class[10]

and 70% of the class,[11] respectively. Here, the Direct Mail Notice is calculated to

reach every member of the Settlement Class members identified in the Notice

---

[10] *Hartless v. Clorox Co.*, 2011 U.S. Dist. LEXIS 5427, at *25 (S.D. Cal. Jan. 20, 2011) (court granted final approval of settlement where notice was estimated to reach 75-83% of the class).

[11] *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, at *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

Database by Direct Mail Notice. With 99.6% of Settlement Class Member addresses available to send Direct Mail, it will almost certainly reach far more than the 70% to 80% threshold found to be sufficient in the aforementioned cases. The mailing of the Direct Mail Notice, combined with the posting of a Notice on the website, and the Press Release satisfies the requirements of due process, is the best notice practicable under the circumstances, and constitutes due and sufficient notice.

### E. THE COURT SHOULD APPOINT THE CLASS REPRESENTATIVE AND CLASS COUNSEL

As noted *supra* in Section IV(C)(4), the adequacy of representation requirement is met here. For settlement purposes, the Parties jointly request that the Plaintiff, Virginia Guiette, be appointed as the Class Representatives. The Parties have agreed that Kazerouni Law Group, APC, and Hyde & Swigart, APC should be appointed as Class Counsel for Plaintiff and for all other purposes of the Settlement. Agreement § 4.01. Plaintiff's counsel all have extensive experience sufficient to be appointed as Class Counsel here. Kazerounian Decl. ¶¶ 29-63; Swigart Decl. ¶¶ 13-24. Plaintiff Guiette understands the obligations of serving as class representative, has adequately represented the interests of the putative class, and has retained experienced counsel. Kazerounian Decl. ¶ 27; Swigart Decl. ¶ 12; Guiette Decl. ¶ 3. Plaintiff has no antagonistic or conflicting interests with the Class Members. Kazerounian Decl., ¶ 64; Guiette Decl. ¶¶ 6, 7. Plaintiff and the Class Members seek the same relief, which includes statutory damages for Defendant's alleged unlawful actions as well as

injunctive relief. Considering the overwhelming similarity of the claims, there is no potential for conflicting interests in this action.

### F. THE COURT SHOULD APPOINT RUST CONSULTING, INC. AS THE CLAIMS ADMINISTRATOR

The Parties have agreed upon and propose that the Court appoint Rust Consulting, Inc. to serve as the Claims Administrator. Agreement, §§ 2.10, 7.01. Rust Consulting, Inc. specializes in providing administrative services in class action litigation and has extensive experience in administering consumer protection and privacy class action settlements. Janowicz Decl., ¶¶ 3, 4.

### G. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is the formal Final Approval Hearing or Fairness Hearing, at which time the Court may hear all evidence and argument, both for and against, the Settlement in order to evaluate its merits and determine whether it should be approved. The Parties request that the hearing be held not before 120 days after the date of entry of the Preliminary Approval Order to allow sufficient time for providing CAFA Notice, direct mail notice and the 90 day claims period.

## V. CONCLUSION

For all the foregoing reasons, the Parties respectfully request that the Court enter an order preliminarily approving the proposed Settlement.

Respectfully Submitted,

Date: November 14, 2018          By:/s/ Abbas Kazerounian
                                 Abbas Kazerounian
                                 **KAZEROUNI LAW GROUP**
                                 245 Fischer Avenue, Unit D1
                                 Costa Mesa, CA 92626
                                 Telephone:   (800) 400-4808 Ext. 2
                                 Facsimile:    (800) 520-5523
                                 Email: ak@kazlg.com


Date: November 14, 2018          By:/s/ Joshua B. Swigart
                                 Joshua B. Swigart
                                 *Pro Hac Vice Application Pending*
                                 **HYDE & SWIGART**
                                 2221 Camino Del Rio South, Suite 101
                                 San Diego, CA 92108
                                 Telephone:   (619) 233-7770
                                 Facsimile:    (619) 297-1022
                                 Email: josh@westcoastlitigation.com

Date: November 14, 2018          By:/s/ W. Mark Jump
                                 W. Mark Jump
                                 **JUMP LEGAL GROUP**
                                 2130 Arlington Avenue
                                 Columbus, OH 43221
                                 Telephone:   (614) 481-7216
                                 Facsimile:    (866) 334-2208
                                 Email: wmjump@jumplegal.com

Date: November 14, 2018          By:/s/ Anthony P. Chester
                                 Anthony P. Chester
                                 **HYDE & SWIGART**
                                 120 South 6th Street, Suite 2050
                                 Minneapolis, MN 55402
                                 Telephone:   (952) 225-5333
                                 Facsimile:    (800) 635-6425
                                 Email: tony@westcoastlitigation.com

                                 *Attorneys for Plaintiff Virginia Guiette*