**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

---

| | |
|---|---|
| Virginia Guiette, *individually and on behalf of all others similarly situated*, | Case No.: 1:18-cv-00174<br>Judge: Timothy S. Black |
| Plaintiff, | **PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD** |
| v. | |
| U.S. Bank National Association, | |
| Defendant. | |

---

In accord with this Court's March 27, 2019 Order, Plaintiff files this Motion for Attorneys' Fees, Costs, and Service Award. Doc. No. 32. From the Settlement Fund of $2,670,336.00, Plaintiff requests 25% for attorneys' fees in the amount of $667,584.00, plus costs in the amount of $7,822.63, and a service award for Plaintiff in the amount of $5,000.00.   This Motion has been brought by agreement of the parties, is unopposed, and therefore complies with Local Rules 7.3(b).

Respectfully Submitted,

Date: May 6, 2019

By:/s/ Abbas Kazerounian

Abbas Kazerounian
**KAZEROUNI LAW GROUP**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone:   (800) 400-4808 Ext. 2
Facsimile:   (800) 520-5523
Email: ak@kazlg.com

---

1

Date: May 6, 2019                    By:/s/ Joshua B. Swigart
                                         Joshua B. Swigart
                                         **HYDE & SWIGART**
                                         2221 Camino Del Rio South, Suite 101
                                         San Diego, CA 92108
                                         Telephone:   (619) 233-7770
                                         Facsimile:   (619) 297-1022
                                         Email: josh@westcoastlitigation.com

Date: May 6, 2019                    By:/s/ Anthony P. Chester
                                         Anthony P. Chester
                                         **HYDE & SWIGART**
                                         120 South 6th Street, Suite 2050
                                         Minneapolis, MN 55402
                                         Telephone:   (952) 225-5333
                                         Facsimile:   (800) 635-6425
                                         Email: tony@westcoastlitigation.com

Date: May 6, 2019                    By:/s/ W. Mark Jump
                                         W. Mark Jump
                                         **JUMP LEGAL GROUP**
                                         2130 Arlington Avenue
                                         Columbus, OH 43221
                                         Telephone:   (614) 481-7216
                                         Facsimile:   (866) 334-2208
                                         Email: wmjump@jumplegal.com

                                         *Attorneys for Plaintiff Virginia Guiette*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

---

| | |
|---|---|
| Virginia Guiette, *individually and on behalf of all others similarly situated*, | Case No.: 1:18-cv-00174<br>Judge: Timothy S. Black |
| Plaintiff,<br>v. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD** |
| U.S. Bank National Association, | |
| Defendant. | |

---

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................1

II.    PROCEDURAL HISTORY SINCE PRELIMINARY APPROVAL ........1

III.   THE COURT SHOULD GRANT PLAINTIFF'S REQUEST FOR
ATTORNEYS' FEES, LITIGATION COSTS AND SERVICE AWARD ..2

     A.    PLAINTIFF'S REQUEST FOR 25% OF THE SETTLEMENT FUND AS
          ATTORNEYS' FEES IS REASONABLE .....................................................3

     B.    THE RAMEY FACTORS SUPPORT PLAINTIFF'S REQUEST FOR
          ATTORNEYS' FEES................................................................................6

          1.    The value of the benefits rendered to the class.......................7

          2.    Society's stake in rewarding attorneys who produce such
                benefits in order to maintain an incentive to others ..................9

          3.    The services were undertaken on a contingent fee basis ........10

          4.    The value of the attorneys' services...........................................11

          5.    The complexity of the litigation..................................................14

          6.    The professional skill and standing of counsel on both sides ..15

     C.    PLAINTIFF'S REQUEST FOR REIMBURSEMENT OF LITIGATION
          EXPENSES FROM THE SETTLEMENT FUND IS REASONABLE............16

     D.    PLAINTIFF'S REQUEST FOR A SERVICE AWARD OF $5,000 FROM
          THE SETTLEMENT FUND IS REASONABLE ........................................17

IV.   CONCLUSION ...........................................................................19

## I.     INTRODUCTION

Plaintiff Virginia Guiette ("Plaintiff"), through the undersigned attorneys ("Class Counsel"), respectfully submit this memorandum in support of their motion for attorneys' fees, litigation costs and services awards in this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq*. ("TCPA") against U.S. Bank National Association ("U.S. Bank"). From the settlement of $2,670,336.00 ("Settlement Fund"), Plaintiff requests 25% for attorneys' fees in the amount of $667,584.00 for Class Counsel, litigation expenses in the amount of $7,822.63, and a service award of $5,000 to the named Plaintiff.

The request for attorneys' fees, costs and services awards is in line with Sections 5.02 of the Settlement Agreement ("Agreement") which permits a request for attorneys' fees and costs—as well as Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class. *See* Doc. No. 20; Doc. No. 21-1.

## II.    PROCEDURAL HISTORY SINCE PRELIMINARY APPROVAL

The proposed class action settlement was preliminarily approved on February 13, 2019. Doc. No. 28. The Preliminary Approval Order was amended on February 20, 2019, and again on March 27, 2019. Doc. Nos. 30, 32. The deadline for settlement class members to file a claim, object or request exclusion from the settlement will pass on June 13, 2019. Doc. No. 32. The present fee petition was

ordered to be filed by May 6, 2019. Doc. No. 32. A fairness hearing has been scheduled for July 8, 2019. Doc. No. 32. Plaintiff filed this fee petition on May 6, 2019—more than thirty (30) days prior to the deadline to object to the settlement—in line with Federal Rule of Civil Procedure 23(h). *See Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 993 (9th Cir. 2010).

## III. THE COURT SHOULD GRANT PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES, LITIGATION COSTS AND SERVICE AWARD

The Agreement requires U.S. Bank to fund a non-reversionary, cash settlement fund of $2,670,336.00 ("Settlement Fund"). Agreement § 2.36; Doc. No. 22-1, pg. 8. Each Settlement Class Member who submits a claim will receive a cash award. Agreement §§ 4.05, 4.06; Doc. No. 21-1, pg. 11. No amount of the Settlement Fund will revert back to U.S. Bank. Agreement § 2.36; Doc. No. 22-1, pg. 8.

Each Settlement Class Member making a claim will receive a *pro rata* share of the Settlement Fund. Agreement §§ 4.05, 4.06; Doc. No. 21-1, pg. 11. Although it is not possible to know the precise amount of the cash awards until all claims have been submitted and verified, Class Counsel, based on their experience in similar TCPA class actions, conservatively estimated at the time of preliminary approval that each cash award would be approximately $40-$80, based on an estimated 3-6% claims rate. *See* Doc. No. 21-1, pgs. 48, 54. As of May 6, 2019, the claims rate is 2.2%, meaning that, as of now (assuming attorneys' fees of $667,584.00, Class Counsel costs of $7,822.63, and class notice administrative costs of $357,567.00), each class member making a

claim will received approximately $111.72 from the Settlement Fund. Declaration of Abbas Kazerounian ("Kazerounian Decl.") ¶¶ 56-58; Doc. No. 24, ¶ 6.

After settlement payments are made, and if uncashed checks permit a second *pro rata* distribution equal to or greater than $1 per qualifying claimant, the Settlement Administrator will make a second pro rata distribution to Settlement Class Members who cashed settlement checks. Agreement 7.04(e); Doc. 21-1, pg. 16. Only if a second distribution is not made, or if checks remain uncashed after the second distribution, will the uncashed amount be distributed as *cy pres* award if approved by the Court. Agreement 7.04(f); Doc. 21-1, pg. 16.

Plaintiff's request for 25% of the Settlement Fund for Class Counsel as attorneys' fees in the amount of $667,584.00, plus litigation costs of $7,822.63, and a service award of $5,000.00 to the named Plaintiff, is appropriate and should be granted. Kazerounian Decl. ¶¶ 46, 52-54; Declaration of Joshua B. Swigart ("Swigart Decl.") ¶ 24, 30-32; Declaration of Virginia Guiette ("Guiette Decl.") ¶¶ 7, 8.

### A. PLAINTIFF'S REQUEST FOR 25% OF THE SETTLEMENT FUND AS ATTORNEYS' FEES IS REASONABLE

"Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval. Fed.R.Civ.P. 23(e)." In the Sixth Circuit, the trial court is given the discretion as to what method to use for determining an attorneys' fees award, and the percentage of recovery method has been specifically identified as an appropriate

approach. *Rawlings v. Prudential-Bache Properties, Inc*., 9 F.3d 513, 517 (6th Cir. 1993) ("we conclude that use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases . . . ."). The only requirement is that an award of attorneys' fees be reasonable under the circumstances. *Id*. at 516.

The Sixth Circuit has acknowledged that the trend in fee awards tilts toward applying a percentage-of-the-fund method. *Id*. at 515. Courts in this circuit have taken note, as the Eastern District of Michigan described the analysis:

> In *Rawlings*, the Sixth Circuit observed that the recent trend has been towards application of a percentage-of-the-fund method in common fund cases. *See id*. As recognized by this Court in Order No. 49, courts in the Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common fund cases. . . . *Fournier v. PFS Invs., Inc.*, 997 F.Supp. 828, 832–33 (E.D.Mich.1998) (choosing percentage-of-the-fund method in class action securities litigation). In *Fournier*, the court observed that:
>
> > The lodestar method should arguably be avoided in situations where such a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result. Courts and commentators have been skeptical of applying the formula in common fund cases.... [M]any courts have strayed from using lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees.
>
> *Id*. at 831–32 (internal citations omitted).
>
> This Court agrees, as it did in Order No. 49, with Judge Cook's observations in *F & M Distribs. Inc. Sec. Litig*., that (1) "the lodestar

> method is too cumbersome and time-consuming of the resources of the Court"; and (2) "more importantly, the 'percentage of the fund' approach more accurately reflects the result achieved." 1999 U.S. Dist. LEXIS 11090, at *8 (E.D. Mich. June 29, 1999) (internal quotes and citations omitted). This Court's decision to apply the percentage-of-the-fund method is consistent with the majority trend, and, more importantly, is reasonable under the circumstances presented here.

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003).

Here, Class Counsel requests 25% of the overall Settlement Fund for payment of attorneys' fees. The amount requested fits well within the range of attorneys' fees awards for class action settlements in this circuit. *See, e.g., In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380-81 (S.D. Ohio 2006) ("Attorneys fees awards typically range from 20 to 50 percent of the common fund"); *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 1029 (S.D. Ohio 2001) ("the range of reasonableness . . . has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), rev'd on other grounds, 24 Fed. Appx. 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (noting that the range of reasonableness for attorneys' fees awards is between 20%-50%); *In re Valley Sys. Securities Litigation*, No. 5:92-cv-2124, (Bell, J.) (N.D.Ohio March 16, 1994) (30% awarded plus expenses); *In re Nord Res. Corp. Sec. Litig.*, No. C-3-90-380 (S.D.Ohio Dec.9, 1994) (30% awarded plus expenses); *In re Cincinnati Microwave, Inc. Securities Litigation*, No. C-1-95-905 (S.D.Ohio

Mar. 21, 1997) (30% awarded plus expenses); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 WL 764291, at *3 (S.D. Ohio Mar. 9, 2007) (29% awarded).

In TCPA cases in particular, courts have awarded 30% or more of the settlement fund as fees. *See e.g., Schwyhart v. AmSher Collection Servs.*, No. 2:15-cv-01175-JEO, 2017 U.S. Dist. LEXIS 39559, at *9 (N.D.Ala. Mar. 16, 2017) (awarding one-third of the Settlement Fund in a TCPA class action); *James v. JP Morgan Chase Bank, N.A.*, No. 15-cv-2424, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) (approving attorneys' fee award reflecting 30% when "[e]ach claimant will receive approximately $81"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 502-03 (N.D. Ill. 2015) (36% fee award in TCPA class action); *Lees v. Anthem Ins. Cos.*, No. 4:13cv1411, 2015 U.S. Dist. LEXIS 74902, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (34% award in TCPA class action); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (33% award in TCPA class action).

Consequently, a request for an award of 25% of the Settlement Fund as attorneys' fees in this class action is reasonable not only within this Circuit, but broadly as to TCPA class action settlements.

## B. THE *RAMEY* FACTORS SUPPORT PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES

In the Sixth Circuit, district courts may consider six factors in measuring the reasonableness of a fee award known as the *Ramey* factors. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). The factors are:

6

(1) the value of the benefits rendered to the class;

(2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

(3) whether the services were undertaken on a contingent fee basis;

(4) the value of the attorneys' services;

(5) the complexity of the litigation; and

(6) the professional skill and standing of counsel on both sides.

*Merkner v. AK Steel Corp.*, No. 1:09-CV-423-TSB, 2011 WL 13202629, at *3 (S.D. Ohio Jan. 10, 2011); *Dillow v. Home Care Network, Inc.*, No. 1:16-CV-612-TSB, 2018 WL 4776977, at *5 (S.D. Ohio Oct. 3, 2018).

### 1.     The value of the benefits rendered to the class

Class Counsel's work resulted in a significant benefit to class members, whereby each class member who makes a claim will receive a cash payment, *pro rata*, from the Settlement Fund. Agreement §§ 4.05, 4.06; Doc. No. 21-1, pg. 11. As this is a case alleging violations of the TCPA, class members making a claim avoid the requirement of establishing a prima facie case under § 227(b)(1)(A) by showing that: "(1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient." *Pugliese v. Professional Recovery Service, Inc.*, 2010 WL 2632562 at *7 (E.D. Mich. June 29, 2010); *Harris v. World Fin. Network Nat. Bank*, 867 F.Supp. 2d 888, 892 (E.D. Mich. 2012).

Further, class members making a claim avoid uncertainty in this TCPA litigation. The recent D.C. Circuit Court of Appeals decision in *ACA Int'l v. Fed. Commc'ns Comm'n*, has caused a shift in the case law as to what the definition of an Automatic Telephone Dialing System ("ATDS") is under the TCPA, and consequently, what machines qualify as ATDS. 885 F.3d 687 (D.C. Cir. 2018). Courts within the Sixth Circuit have taken conflicting approaches. *See Ammons v. Ally Fin., Inc.*, No. 3:17-CV-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018) (granting in part plaintiff's motion for summary judgment and holding that *ACA International* changed nothing as it relates to the definition of an ATDS as considered by FCC Orders from 2003 and 2008); *but see Gary v. TrueBlue, Inc.*, No. 17-CV-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018) (denying plaintiff's motion for summary judgment and finding the definition of an ATDS to be restricted to the statutory text, without consideration of subsequent FCC Orders). The path forward is uncertain for any class member desiring to make a separate claim under the TCPA.

Additionally, as of today, there have only been 22 exclusions from the settlement and 1 objection. Kazerounian Declaration ¶¶ 59, 60. That equates to .003% of the Class. Kazerounian Declaration ¶ 61. Few objections indicates that the settlement is fair, reasonable, and adequate. *Hainey v. Parrott*, 617 F. Supp.2d 668, 675 (S.D. Ohio 2007); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992). A court should not withhold approval of the settlement merely because some class members object to it. *Id.* Objections will be addressed in the motion for final approval.

## 2. Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others

"There is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and attorneys who take on class action cases enable this." *Dillow*, 2018 WL 4776977, at *6 (citing *Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017)). Here, U.S. Bank is alleged to have violated the TCPA by calling the cellular telephones of account-holders without "prior express consent," using an "automatic telephone dialing system" and/or using an "artificial or prerecorded voice." *See generally,* Doc. No. 1. Many of the Class Members would likely not have been able, willing, or even known to pursue their claim individually.

This Settlement addresses U.S. Bank's conduct as to 667,584 possible claimants and provides a cash award to those Class Members while also creating a deterrent from U.S. Bank from engaging in the same conduct in the future. *See* Doc. No. 20, pg. 21. This Settlement also creates an incentive for other businesses to comply with the TCPA, which benefits the Class Members, consumers in general, as well as compliant competitive businesses. *See generally*, David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a

competitive disadvantage. This creates a disincentive for compliance.")

Counsel who take on complicated class action litigation on a contingency basis should be rewarded because they do so "bearing the risk of recovery inherent in litigation" and can spend potentially millions of dollars in attorney time and expenses in prosecuting the litigation with the very real risk that they will never be compensated for their time or reimbursed for their expenses incurred. *In re Cardizem*, 218 F.R.D. at 544; *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983). Counsel's willingness to bear such risk benefits society as it encourages consumers without resources to bring actions to vindicated their rights. "Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *Dillow*, 2018 WL 4776977, at *6 (citing *Moore*, 2017 WL 2838148, at *8)). Here, given the results of the class settlement, this factor leans in the favor of awarding Plaintiff's Counsel the requested amount under this Motion.

### 3. The services were undertaken on a contingent fee basis

Class Counsel have litigated this case for nearly two years from the date the case was first filed in the District of Minnesota. *See* Doc. No. 20, pg. 4. Despite the risks associated with a consumer class action of this size, Class Counsel litigated this case on a wholly-contingent basis, with no guarantee of recovery. Kazerounian Decl. ¶ 55; Swigart Decl. ¶ 33. Class Counsel assumed a substantial risk of nonpayment and possible loss for all expenses incurred in litigating this action. *See* Kazerounian Decl.

¶¶ 52-54; Swigart Decl. ¶¶ 30-32. Plaintiff confirms the contingency agreement and supports Class Counsel's request for 25% of the Settlement Fund. Guiette Decl. ¶ 7.

### 4. The value of the attorneys' services

As noted *supra*, there are significant hurdles to recovery not only on a class basis, but also on an individual basis. The proofs required by a prospective individual plaintiff and the uncertainty of the law make for a high-risk case. Without a class action, individual claimants with few calls would lack the resources to litigate a case or otherwise obtain competent counsel willing to take on the case. *See Clevenger*, 2007 WL 764291, *2 (S.D. Ohio March 9, 2007). The settlement in this case confers benefits on the Class as a whole without the risks and delays of further litigation or a series of individual cases. The contingency fee percentage sought in this case is consistent with the realities of private practice, where attorneys working on contingency fee agreements typically negotiate percentage-based fee recoveries with individual clients. *See Merkner*, 2011 WL 13202629, at *3. Here, the services rendered by Class Counsel brought significant value to the class while also avoiding the risks associated with this type of litigation. Moreover, Class Counsel are seeking a reduced fee award from the up to 33.3% contingency fee contemplated in the contingency fee agreement between Plaintiff and Counsel. Swigart Decl. ¶¶ 33, 34.

A lodestar cross-check is unnecessary to support Class Counsel's fee request, as courts within the Sixth Circuit have increasingly embraced a percentage-of-the-

fund method in common fund cases. *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 517 (6th Cir. 1993); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 532. "The lodestar method has been criticized for being too time-consuming of scarce judicial resources." *Rawlings*, 9 F.3d 513, 516. However, a court, in its discretion, may perform a lodestar cross-check as further evidence of the reasonableness of a plaintiff's counsel's percentage-of-the-fund fee request. *See Dillow*, 2018 WL 4776977, at *6. Under a lodestar approach, the court multiplies the number of hours reasonably expended by a reasonable hourly rate. *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016). "The Court then has the discretion to enhance the lodestar with a separate multiplier that can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Dillow*, 2018 WL 4776977, at *6 (citing *Gascho*, 822 F.3d at 279, 280.).

Here, Counsel expended 339.30 hours litigating this case. Kazerounian Decl. ¶¶ 48, 49; Swigart Decl. ¶¶ 26, 27; Declaration of Anthony P. Chester ("Chester Decl.") ¶ 24; Declaration of W. Mark Jump ("Jump Decl.") ¶ 9. Counsel's hourly rates range from $295 to $705. Kazerounian Decl. ¶ 47; Swigart Decl. ¶ 25; Chester Decl. ¶ 23; Jump Decl. ¶ 12. Using Class Counsel's customary hourly rates, multiplied by the hours incurred by counsel, the current lodestar is approximately $150,953.50, as illustrated below:

| Attorney | Hours Worked | Rate | | Amount |
|---|---|---|---|---|
| Abbas Kazerounian | 71.80 | $705.00 | | $50,619.00 |
| Joshua B. Swigart | 38.20 | $705.00 | | $26,931.00 |
| Anthony P. Chester | 171.50 | $325.00 | | $55,737.50 |
| Sarah T. McEahern | 37.30 | $295.00 | | $11,003.50 |
| W. Mark Jump | 20.50 | $325.00 | | $6,662.50 |
| **TOTAL** | **339.30** | | **TOTAL** | **$150,953.50** |

Kazerounian Decl. ¶ 49; Swigart Decl. ¶ 27; Chester Decl. ¶¶ 23, 24; Jump Decl. ¶¶ 9, 12.

A fee request of 25% equates to approximately 4.42 times the present lodestar. This is well within the range for multipliers used in this district and in others. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 767 (S.D. Ohio 2007) (lodestar multiplier of six); *Merkner*, No. 1:09–CV–423–TSB (S.D. Ohio, Order filed Jan. 10, 2011, at p. 6) (awarding 10% of the cash portion of the settlement representing a lodestar multiplier of 5.3); *In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 736 n. 44 (E.D.Pa.2001) (finding fee award equivalent to 4.5 to 8.5 lodestar multiplier "unquestionably reasonable"); *In re Rite Aid Corp. Secs. Litig*., 362 F.Supp.2d 587, 589 (E.D. Pa. 2005) (lodestar multiplier on the fee ultimately awarded was 6.96); *In re RJR Nabisco*, 1992 WL 210138, at *5–6 (S.D.N.Y. Aug.24, 1992) (lodestar multiplier of 6); *Cosgrove v. Sullivan*, 759 F.Supp. 166, 167 n. 1 (S.D.N.Y. 1991) (fee represented a multiplier of 8.74); B*oston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir.1985) (multiplier of 6); *Roberts v. Texaco, Inc.*, 979 F.Supp. 185, 200 (S.D.N.Y.1997) (multiplier of 5.5); *In re Charter Communications, Inc.*, Sec.

Litig., No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (a multiplier of 5.61 "falls within the range of multipliers found reasonable for cross-check purposes by courts in other similar actions, and is fully justified here given the effort required, the hurdles faced and overcome, and the results achieved."); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134–35 (D.N.J.2002) (awarding 28% of a $194 million settlement that resulted in a lodestar multiplier of 4.3); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (approving percentage fee that resulted in multiplier of 5.3).

Though unnecessary, a lodestar cross-check still fits well within the range contemplated when applying a loadstar cross-check with a multiplier. Coupled with Class Counsel's voluntary reduction of a requested fee award down to 25% and the considerable value of Class Counsel's services, the fee request is reasonable.

### 5.    The complexity of the litigation

TCPA litigation is complex and demanding. As noted *supra*, as well as in Plaintiff's Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement class, TCPA litigation is currently experiencing a period of uncertainty as it relates to the application of the definition of an ATDS and what machines qualify as an ATDS. *See* Doc. No. 20, pgs. 32-33. Additionally the complexity of the analysis as to the uses and capacities of the machine allegedly employed by U.S. Bank to call all Class

Members is extensive, complicated, and extremely costly. Significant amounts of further discovery, expert analysis and motion practice are on the horizon should this Class Action not achieve final approval based upon the Agreement.

Class Counsel made substantial efforts in negotiating the settlement achieved in this case, including engaging in a full day of mediation with Mr. Bruce Friedman, Esq. and then extensive negotiations thereafter as to the settlement agreement terms. Doc. No. 20, pg. 19. Class Counsel also conducted confirmatory discovery to confirm the total number of cellular telephones called by U.S. Bank and the processes and methodology used by U.S. Bank to assemble the data relied upon for the purposes of outlining the total number of members of the class. Doc. No. 20, pgs. 19-20. Class Counsel's investigation and approach to mediation resulted in a relatively prompt settlement, rather than after many years of costly litigation. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").

### 6.    The professional skill and standing of counsel on both sides

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). Substantial familiarity with the TCPA, including agency rulings and emerging case law, is needed to successfully prosecute TCPA actions on a putative class basis, especially following the FCC's 2015 ruling on the TCPA

in *Rules & Regulations Implementing the TCP Act of 1991 et al.*, 30 FCC Rcd 7961 (F.C.C. July 10, 2015), which was recently overturned in part by *ACA Int'l v. FCC*, No. 15-1211, 2018 U.S. App. LEXIS 6535 (D.C.Cir. Mar. 16, 2018). Class Counsel are very skilled, well practiced in the area of TCPA litigation, and highly regarded in their field. *See* Kazerounian Decl. ¶¶ 12-46; Swigart Decl. ¶¶ 13-24.

Class Counsel worked diligently to obtain the substantial, all-cash, non-reversionary Settlement Fund for the Settlement Class. This represents a favorable result for the Class (for the reasons articulated *supra*), which is attributable to the determination, hard work, and reputation of Class Counsel.

Counsel for U.S. Bank are very highly regarded attorneys in their field, often defending large, complex financial institutions in TCPA litigation. "The quality of opposing counsel is important in assessing the quality of the services rendered by Plaintiffs' Counsel." *Merkner*, 2011 WL 13202629, at *3 (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983) (evaluating "the professional skill and standing of counsel involved on both sides")). Class Counsel obtaining a settlement despite the opposition from formidable legal opposition only further demonstrates the superior quality of legal services provided by Class Counsel.

### C. PLAINTIFF'S REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES FROM THE SETTLEMENT FUND IS REASONABLE

"Under the common fund doctrine, Plaintiff's counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the

prosecution of claims and in obtaining settlement." *Dillow*, 2018 WL 4776977, at *7 (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535); *see also Rubenstein, Newberg on Class Actions* § 16:1 (5th ed. 2016), Fed. R. Civ. P. 54(d)(1). "Expense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Dillow*, 2018 WL 4776977, at *7.

Pursuant to the Agreement, Class Counsel are allowed to request reimbursement of costs incurred in litigation. *See* Agreement § 5.02; Doc. No. 22-1, pg. 12. Additionally, in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class, Plaintiff specifically notes that Class Counsel intend to ask for litigation costs not to exceed $25,000.00. Doc. No. 20, pg. 28. Class Counsel have attached sworn declarations for litigation costs to date of $7,822.63. Kazerounian Decl. ¶ 52; Swigart Decl. ¶ 30. The costs requested were reasonably incurred in the prosecution and settlement of this case. Moreover, the costs requested to date are far below the threshold of $25,000.00 contemplated in the preliminary approval papers. *See* Doc. No. 20, pg. 28. Finally, Class Counsel has lost the use of this money for one or more years when considering that this action began nearly two years ago. *See* Doc. No. 20, pg. 4. The Agreement, case law, and fairness all indicate that Class Counsel shall be reimbursed for costs incurred in this action.

### D.    PLAINTIFF'S REQUEST FOR A SERVICE AWARD OF $5,000 FROM THE SETTLEMENT FUND IS REASONABLE

Plaintiff requests a service award (also known as an "incentive award") of

$5,000 from the Settlement Fund for her participation in the litigation of this case. Courts typically authorize service awards to class representatives for their involvement with a lawsuit. *Dillow*, 2018 WL 4776977, at *7 (citing *Estep v. Blackwell*, Case No. 1:06-cv-106, 2006 WL 3469569, at *5–6, 2006 U.S. Dist. LEXIS 89360, at *15 (S.D. Ohio Nov. 29, 2006)) "Such compensation to named plaintiffs is typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *Dillow*, 2018 WL 4776977, at *7 (citing *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997)).

The requested award is consistent with awards in other TCPA settlements. *See Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving $25,000 service award to TCPA class representative); *Grant v. Capital Mgmt. Servs., L.P.*, 2014 U.S. Dist. LEXIS 29836, at *21 (S.D.Cal. Mar. 5, 2014) (approving $5,000 incentive award in TCPA case where class members received injunction relief); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 15-cv-01175, 2017 U.S. Dist. LEXIS 39559, at *9 (N.D. Ala. Mar. 16, 2017) (approving a $10,000 incentive award in a TCPA action); *Martin v. Dun & Bradstreet, Inc.*, No. 12–cv–215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving a $20,000 service award to a TCPA class representative).

18

Here, Plaintiff contributed to the lawsuit by (1) providing information to her counsel, (2) discussing the case with her counsel to remain informed and involved throughout the litigation, and (3) reviewing, approving, and executing responsive documents, including the Settlement Agreement. Guiette Decl. ¶ 5.  Plaintiff also was willing to testify at trial, should it have been required. Guiette Decl. ¶ 6. Considering Plaintiff's participation in this litigation for nearly two years, a requested service award of $5,000.00 is more than reasonable. *See* Doc. No. 20, pg. 4. *See* Guiette Decl. ¶ 8.

## IV.    CONCLUSION

As noted above, a request for a percentage-of-the-fund recovery of 25% of the Settlement Fund for a total of $667,584.00 is reasonable and well supported by case law and the *Ramey* factors. Class Counsel's request for litigation costs of $7,822.63 is likewise reasonable and supported by case law. Finally, Plaintiff's request for a service award of $5,000.00 for Plaintiff is justified, given Plaintiff's participation in the litigation and the fact that the award is consistent with other TCPA class action service awards. Plaintiff and Class Counsel respectfully request that the Court enter an order granting Plaintiff and Class Counsel's request for attorneys' fees, costs, and a service award for Plaintiff. A proposed order will be submitted with the to-be-filed motion for final approval of class action settlement, requesting both approval of this fee petition and final approval of the settlement.

Respectfully Submitted,

Date: May 6, 2019                    By:/s/ Abbas Kazerounian
                                     Abbas Kazerounian
                                     **KAZEROUNI LAW GROUP**
                                     245 Fischer Avenue, Unit D1
                                     Costa Mesa, CA 92626
                                     Telephone:   (800) 400-4808 Ext. 2
                                     Facsimile:   (800) 520-5523
                                     Email: ak@kazlg.com

Date: May 6, 2019                    By:/s/ Joshua B. Swigart
                                     Joshua B. Swigart
                                     **HYDE & SWIGART**
                                     2221 Camino Del Rio South, Suite 101
                                     San Diego, CA 92108
                                     Telephone:   (619) 233-7770
                                     Facsimile:   (619) 297-1022
                                     Email: josh@westcoastlitigation.com

Date: May 6, 2019                    By:/s/ Anthony P. Chester
                                     Anthony P. Chester
                                     **HYDE & SWIGART**
                                     120 South 6th Street, Suite 2050
                                     Minneapolis, MN 55402
                                     Telephone:   (952) 225-5333
                                     Facsimile:   (800) 635-6425
                                     Email: tony@westcoastlitigation.com

Date: May 6, 2019                    By:/s/ W. Mark Jump
                                     W. Mark Jump
                                     **JUMP LEGAL GROUP**
                                     2130 Arlington Avenue
                                     Columbus, OH 43221
                                     Telephone:   (614) 481-7216
                                     Facsimile:   (866) 334-2208
                                     Email: wmjump@jumplegal.com

                                     *Attorneys for Plaintiff Virginia Guiette*