| | |
|---|---|
| Virginia Guiette, *individually and on behalf of all others similarly situated*, | Case No.: 1:18-cv-00174 <br> Judge: Timothy S. Black |
| Plaintiff, | |
| v. | **PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| U.S. Bank National Association, | |
| Defendant. | |

Plaintiff Virginia Guiette and Defendant U.S. Bank National Association have reached a fair, reasonable, and adequate settlement in the above-captioned matter. Preliminary approval was granted February 13, 2019 and this Motion for Final Approval follows the properly executed notice period. Pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(c), Plaintiff brings this unopposed motion to move the Court to: (1) grant final approval of the terms of the settlement agreement in this action and (2) grant approval of *cy pres* beneficiary. This Motion has been brought by agreement of the parties and therefore complies with Local Rules 7.3(b).

Respectfully Submitted,

Date: June 24, 2019                    By: /s/ Abbas Kazerounian
                                            Abbas Kazerounian
                                            **KAZEROUNI LAW GROUP**
        245 Fischer Avenue, Unit D1
        Costa Mesa, CA 92626
        Telephone:  (800) 400-4808 Ext. 2
        Facsimile:  (800) 520-5523
        Email: ak@kazlg.com

Date: June 24, 2019                    By: /s/ Joshua B. Swigart
        Joshua B. Swigart
        **HYDE & SWIGART**
        2221 Camino Del Rio South, Suite 101
        San Diego, CA 92108
        Telephone:  (619) 233-7770
        Facsimile:  (619) 297-1022
        Email: josh@westcoastlitigation.com

Date: June 24, 2019                    By: /s/ Anthony P. Chester
        Anthony P. Chester
        **HYDE & SWIGART**
        120 South 6th Street, Suite 2050
        Minneapolis, MN 55402
        Telephone:  (952) 225-5333
        Facsimile:  (800) 635-6425
        Email: tony@westcoastlitigation.com

Date: June 24, 2019                    By: /s/ W. Mark Jump
        W. Mark Jump
        **JUMP LEGAL GROUP**
        2130 Arlington Avenue
        Columbus, OH 43221
        Telephone:  (614) 481-7216
        Facsimile:  (866) 334-2208
        Email: wmjump@jumplegal.com

        *Attorneys for Plaintiff Virginia Guiette*

| | |
|---|---|
| Virginia Guiette, *individually and on behalf of all others similarly situated*, | Case No.: 1:18-cv-00174 |
| | Judge: Timothy S. Black |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| U.S. Bank National Association, | |
| Defendant. | |

# TABLE OF CONTENTS

I.    SUMMARY ..................................................................................1

II.   CLAIMS ADMINISTRATION ..............................................2

      A.    CLASS NOTICE .................................................................2

      B.    PROCEEDINGS TO DATE ...............................................3

            1.    No Current Objections .............................................3

                  a.    *Tereasa J. Cool Correspondence* .....................4

            2.    Only 58 Timely Requests for Exclusion .................5

            3.    Claims to the Settlement .........................................6

      C.    MONETARY RELIEF ........................................................7

      D.    CLASS RELEASE ..............................................................7

      E.    ATTORNEYS' FEES, COSTS, AND SERVICE AWARD ...........8

III.  FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED .........8

      A.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND
            SHOULD BE APPROVED ...................................................9

            1.    The Plaintiff's Likelihood of Ultimate Success on the Merits
                  Balanced Against the Amount and Form of Relief Offered in
                  Settlement .............................................................10

                  a.    *Liability is highly contested and both sides face
                        significant challenges in litigating this case* ...............10

                  b.    *Defendant's agreement to create a $2,670,336.00
                        Settlement Fund provides a fair and substantial benefit
                        to the class* ....................................................12

            2.    The Complexities, Expense, and Likely Duration of Litigation
                  Lends Toward Settlement .......................................15

i

       3.       **The Stage of the Proceedings** ....................................................17

       4.       **Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to the Class**.....................................18

       5.       **The Settlement Was Reached As the Result of Arm's Length Negotiation, Without Collusion, with a Neutral, Third-Party Facilitating a Mediation** ..........................................................19

       6.       **There are No Current Objections to the Settlement and Only a Small Number of Requests for Exclusion**.................21

       7.       **This Settlement is in the Public Interest** ...............................21

**IV.**   **REQUEST FOR APPROVAL OF *CY PRES* BENEFICIARY**...................22

    A.   **THE NATURE OF THE LAWSUIT AND INTERESTS OF THE SETTLEMENT CLASS MEMBERS** ..........................................................23

**V.**    **CONCLUSION** ...........................................................................24

**_Federal Cases_**

*ACA Int'l v. Fed. Commc'ns Comm'n,*

    885 F.3d 687 (D.C. Cir. 2018) ...............................................................11, 18

*Ammons v. Ally Fin., Inc.,*

    No. 3:17-CV-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018) ............11

*Amos v. PPG Indus., Inc.,*

    No. 2:05-CV-70, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015)....................15

*Arthur v. Sallie Mae, Inc.,*

    10-cv-0198-JLR (W.D. Wash.).......................................................................12

*Bayat v. Bank of the West,*

    No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ......13-14

*Beecher v. Able,*

    575 F.2d 1010 (2d Cir. 1978).........................................................................23

*Behrens v. Wometco Enters., Inc.,*

    118 F.R.D. 534 (S.D. Fla. 1988).....................................................................18

*Carson v. Am. Brands,*

    450 U.S. 79 (1981)..........................................................................................10

*Connectivity Sys. Inc. v. Nat'l City Bank,*

    No. 08-cv-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) .........................8

*Couser v. Comenity Bank*,

    125 F. Supp. 3d 1034 (S.D. Cal. 2015) ........................................6-7

*Dillow v. Home Care Network, Inc.*,

    No. 1:16-CV-612, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018)...........4, 17, 21

*Franks v. Kroger Co.*,

    649 F.2d 1216 (6th Cir. 1981)...........................................................21

*Gary v. TrueBlue, Inc.*,

    No. 17-CV-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018).................11

*Gascho v. Glob. Fitness Holdings, LLC*,

    822 F.3d 269 (6th Cir. 2016) ...........................................................22

*Gehrich v. Chase Bank United States*,

    316 F.R.D. 215 (N.D. Ill. 2016) .....................................................14

*Granada Inv. v. DWG Corp.*,

    962 F.2d 1203 (6th Cir. 1992)............................................................9

*Hainey v. Parrott*,

    617 F. Supp. 2d 668 (S.D. Ohio 2007) ..........................................4, 21

*Hartless v. Clorox Co.*,

    2011 U.S. Dist. LEXIS 5427 (S.D. Cal. Jan. 20, 2011) ..................................3

*In re Broadwing, Inc. ERISA Litig.*,

    252 F.R.D. 369 (S.D. Ohio 2006).......................................9, 10, 12, 15-16, 18

*In re Capital One Tel. Consumer Prot. Act Litig.*,

    80 F. Supp. 3d 781 (N.D. Ill. 2015)................................................14-15

*In re Cardizem CD Antitrust Litig.*,

    218 F.R.D. 508 (E.D. Mich. 2003) .................................................10

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,

    248 F.R.D. 483 (E.D. Mich. 2008) .................................9, 15, 18, 19

*In re General Tire & Rubber Co. Sec. Litig.*,

    726 F.2d 1075 (6th Cir. 1984).........................................................10

*In re Global Crossing Sec. and ERISA Litig.*,

    225 F.R.D. 436 (E.D. Pa. 2000).......................................................13

*In re Nationwide Fin. Servs. Litig.*,

    No. 08-cv-249, 2009 U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009).....8

*In re Omnivision Tech., Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ...............................13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,

    148 F.3d 283(3d Cir. 1998)..............................................................16

*In re Sw. Airlines Voucher Litig.*,

    No. 11 C 8176, 2013 WL 4510197 (N.D.Ill. Aug. 26, 2013) ............5

*In re Telectronics Pacing Sys., Inc.*,

    137 F. Supp. 2d 985 (S.D. Ohio 2001) .......................................16, 19

*In re Wireless Facilities, Inc. Sec. Litig. II,*

　　253 F.R.D. 607 (S.D. Cal. 2008) ..................................................19

*Jiffy Lube International, Inc. Text Spam Litigation*,

　　11-MD-02261-JM-JMA (S.D. Cal Feb. 20, 2013) ........................15

*Johnson v. Midwest Logistics Sys., Ltd.*,

　　Case No. 2:11-cv-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) ..........9

*Kolinek v. Walgreen Co.*,

　　311 F.R.D. 483 (N.D. Ill. 2015)................................................6, 14

*Kritzer v. Safelite Solutions, LLC*,

　　No. 2:10–cv–729, 2012 WL 1945144 (S.D.Ohio May 30, 2012) ..................22

*Levell v. Monsanto Research Corp.,*

　　191 F.R.D. 543 (S.D. Ohio 2000) ..................................................16

*Mahoney v. TT of Pine Ridge, Inc.,*

　　No. 17-80029-CIV, 2017 U.S. Dist. LEXIS 217470 (S.D. Fla. Nov. 17, 2017)....14

*Malta v. Fed. Home Loan Mortg. Corp.*,

　　No. 10-CV-1290-BEN-NLS, 2013 WL 12095060 (S.D. Cal. June 21, 2013)....13

*Medina v. Enhanced Recovery Co., LLC*,

　　No. 15-14342-CIV (S.D. Fla. Nov. 9, 2017)................................16

*National Rural Tele. Coop. v. DIRECTV, Inc.,*

　　221 F.R.D. 523 (C.D. Cal. 2004) ..................................................13

*Powell v. Georgia-Pacific Corp.*,

    843 F. Supp. 491 (W.D. Ark. Jan. 31, 1995) ...................................................23

*Rankin v. Rots*,

    No. 02-CV-71045, 2006 WL 1876538 (E.D. Mich. June 27, 2006)...............18

*Shamblin v. Obama*,

    No. 8:13-cv-2428-T-33TBM (M.D. Fla. Apr. 27, 2015) ...............................16

*Six Mexican Workers v. Ariz. Citrus Growers*,

    904 F.2d 1301 (9th Cir. 1990)........................................................................22

*Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.*,

    No. 13-cv-00489, 2015 WL 1976398 (W.D. Ky. May 5, 2015).......................9

*Stemple v. QC Holdings, Inc.*,

    No. 12-cv-1997-CAB (WVG) (S.D. Cal. June 17, 2013) .............................16

*Stinson v. Delta Mgmt. Assocs., Inc.*,

    302 F.R.D. 160 (S.D. Ohio 2014) ..................................................................23

*Swigart v. Fifth Third Bank*,

    No. 1:11-cv-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014).......................21

*UAW v. General Motors Corp.*,

    No. 05-cv-73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006).......10, 12, 18

*Wess v. Storey*,

    No. 08-cv-623, 2011 WL 1463609 (S.D. Ohio April 14, 2011) ......................18

*Whitford v. First Nationwide Bank,*

   147 F.R.D. 135 (W.D. Ky. 1992) ....................................................4

*Wilkins v. HSBC Bank Nevada, N.A.,*

   No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)..........................14

*Williams v. Vukovich,*

   720 F.2d 909 (6th Cir. 1983) ....................................................9, 10

*Wilson v. Airborne, Inc.,*

   2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008)..........................3

*Wojcik v. Buffalo Bills Inc.*

   No. 8:12-cv-02414-SDM-TBM (M.D. Fla. Aug. 25, 2014)........................15

## *Federal Statutes*

47 U.S.C. § 227 *et seq.* ....................................................................1

28 U.S.C. § 1715(b) *et seq.*...............................................................3

## *Rules*

Fed. R. Civ. Proc. 23(e)(5)..............................................................5

## I. SUMMARY

Plaintiff Virginia Guiette ("Plaintiff"), submits this memorandum in support of her unopposed motion for final approval of the class action settlement (the "Settlement") in this action (the "Action").

Pursuant to this Court's February 13, 2019 Order in this action, the Court preliminarily approved the proposed Settlement memorialized in the settlement agreement ("Agreement") filed with this Court. Doc. No. 28; Doc. No. 20; Doc. No. 21-1. This nationwide Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq* ("TCPA") Settlement addresses U.S. Bank National Association's ("U.S. Bank") conduct as to 667,584 persons associated with cellular telephone numbers that US Bank called ("Class Members"). The Settlement provides significant monetary recovery $2,670,336.00 ("Settlement Fund") to the Class Members. Doc. No. 21-1, Agreement §§ 2.28, 4.04; Kazerounian Decl. ¶ 9. Importantly, final approval is endorsed by the named Plaintiff and Class Counsel. Declaration of Virginia Guiette ("Guiette Decl.") ¶ 3; Declaration of Abbas Kazerounian ("Kazerounian Decl."), ¶ 27; Declaration of Joshua B. Swigart ("Swigart Decl.") ¶ 12; Declaration of Anthony P. Chester ("Chester Decl.") ¶ 11.

Following preliminary approval of the class action settlement, the settlement claims administrator, Rust Consulting, Inc. (the "Administrator"), began the process of providing notice of the settlement to class members and administering incoming

claims. Declaration of Jason M. Stinehart ("Stinehart Decl.") ¶¶ 3-9. The Administrator reports that it reached 98.8% of the 664,706 Class Members it received data from US Bank for through direct mail notices. Stinehart Decl. ¶ 7. Rust also established and administered a website, USbankTCPAsettlement.com, and published notice in *USA Today* as well as issued a national press release to provide additional notice to class members. Stinehart Decl. ¶¶ 2, 9.

The Administrator reports that out of 667,584 Settlement Class Members, 19,147 have filed valid and timely claims, with only 58 Settlement Class Members filing timely requests for exclusion and 0 filing objections. Stinehart Decl. ¶¶ 10, 11, 15. The claims rate is approximately 2.9%, and, after costs and attorneys' fees, it is estimated that individual recovery per claimant who submitted a valid and timely claim will be approximately $84.84. Kazerounian Decl. ¶¶ 83-84; *See* Stinehart Decl. ¶ 18.

This Settlement should be granted because it satisfies the criteria for final approval. Given the significant monetary benefit conferred upon the Class Members making a claim, the low opt-out numbers, and the fact that there are no current objections to the Settlement, this Court should grant final approval and issue an Order to that end.

## II. CLAIMS ADMINISTRATION

### A. CLASS NOTICE

The Court preliminarily approved the notice program that has now been successfully carried out by the Administrator, with a terrific notice direct mail

notice reach of 98.8% of the data set provided by U.S. Bank to the Administrator. Stinehart Decl. ¶ 8. The Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide provides that a 70-95% reach is acceptable for class action notice. Additionally, courts have approved settlements in which notice was calculated to reach 75-83% of a class. *See, e.g., Hartless v. Clorox Co.*, 2011 U.S. Dist. LEXIS 5427, at *25 (S.D. Cal. Jan. 20, 2011) (court granted final approval of settlement where notice was estimated to reach 75-83% of the class); *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, at *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

With 99.8% of direct mail notices received, the notice reach in this case is far more than the 70% to 80% threshold found to be sufficient in the aforementioned cases. Yet, for good measure, Settlement Class Members were also informed of the proposed Settlement by: publication in *USA Today*, a national press release, and the Settlement Website, http://USbankTCPAsettlement.com. Stinehart Decl. ¶¶ 2, 9.

Lastly, the CAFA notice required by 28 U.S.C. § 1715 was timely served on November 20, 2018. Stinehart Decl. ¶ 4.

## B. RESPONSES TO CLASS NOTICE

### 1. No Current Objections

Pursuant to the Second Amended Preliminary Approval Order, the deadline to

object to the Settlement was June 13, 2019. Doc. No. 32. Pursuant to Section 10.03 of the Agreement and the long-form notice, objections were to be filed with the Court, mailed to counsel for both Parties, and mailed to the Administrator. Doc. No. 21-1, pgs. 21, 51. No documents received by Class Members meet the criteria provided in the Agreement, therefore there are no objections to the Settlement. As this Court has previously noted, "a small number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate." *Hainey v. Parrott*, 617 F.Supp.2d 668, 675 (S.D. Ohio 2007) (citing *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-CV-612, 2018 WL 4776977, at *6 (S.D. Ohio Oct. 3, 2018) (no objections filed weighs in the favor of approval).

### a.    *Tereasa J. Cool Correspondence*

A letter dated April 18, 2019 was received by Plaintiffs' counsel from Tereasa J. Cool which included language of a purported objection to the proposed Settlement. Kazerounian Decl. ¶¶ 29-30; Exhibit A. The Court docket does not show that the Court received a purported objection from Ms. Cool. Class Counsel then reached out to Ms. Cool by telephone to better understand the nature of her concerns. Chester Decl. ¶¶ 14-16. Class Counsel learned that Ms. Cool's letter largely stemmed from her desire to "vent" about the conduct of U.S. Bank as to her and that she did not have a full understanding of the Agreement, the intent of the settlement, or the details of the Order for preliminary approval. Chester Decl. ¶ 14-17. Subsequently, on June 13, 2019, Ms.

Cool decided to participate in the Settlement, filed a claim, and clearly stated by letter (transmitted via email to Class Counsel) that she does not have an objection to the Settlement. Kazerounian Decl. ¶¶ 31-33; Exhibit B; Chester Decl. ¶ 18-21. The Administrator reports that Ms. Cool submitted a claim and participated fully in the Settlement. Chester Decl. ¶ 22.  As of June 21, 2019, there are no current objections. Stinehart Decl. ¶ 11.

Thus, pursuant to Fed. R. Civ. P. 23(e)(5), the Court should consider the June 13, 2019 letter from Ms. Cool as affirmatively stating that any objection—if it existed despite not providing it to the Court—is now withdrawn.   Therefore, at the time of final approval, there are no objections on file for the Court to consider.

### 2. Only 58 Timely Requests for Exclusion

The deadline to request exclusion (opt-out) was June 13, 2019.  Doc. No. 32.  To date, there are only 58 timely requests for exclusion out of 667,584 Settlement class members.   Steinhart Decl. ¶ 10.   That equates to approximately .0087%[1] of the total class that has requested to be excluded from the settlement. The remaining 99.9913% of the Class Members are bound by the terms of the Agreement. Such a low opposition rate is well within the range Courts look to in determining if the settlement is reasonable. *See, e.g. In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D.Ill. Aug. 26, 2013) (finding an opt-out and objection rate of less than 0.01% supportive of the reasonableness of settlement). Moreover, 58 opt-outs is

---

[1] 58 divided by 667,584 equals .000086880452497.  Converted to a percentage, it equals .0086880452497%

far less than the 1,000 contemplated in the Agreement that allows U.S. Bank to terminate the Settlement. *See* Doc. No. 21-1, Agreement §§ 15.01, 15.02. Therefore, U.S. Bank is bound by the terms of the Agreement.

### 3.    Claims to the Settlement

The deadline to submit a claim, either online or by mail, was June 13, 2019. Doc. No. 32. As of June 21, 2019, the Administrator has received a total of 21,115 unique claims. Stinehart Decl. ¶ 15. After reviewing the claims, the Administrator has determined that 19,142 are both valid and timely. Stinehart Decl. ¶ 15. The Administrator has mailed approximately 1,396 cure letters to individuals who filed claims that were deficient, of which, only 1 has been returned with a valid claim[2].

The claims rate is approximately 2.9%[3], which is near the anticipated range of 3-6% (as indicated by the monetary recovery rate anticipated in the class notices of $40-$80) contemplated by Class Counsel at the time the Motion for Preliminary Approval was filed. Doc. No. 21-1, pgs. 48, 54. Compared to other TCPA class action settlements, a claims rate of approximately 2.9% is well within a usual claims range for such actions. *See, e.g., Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043-44 (S.D. Cal. 2015) (finding the 7.7%

---

[2] It is possible that, due to mailing delays, a Class Member could timely respond to a cure letter from the Administrator, but the letter would not reach the Administrator until after the date of the Final Approval Hearing. Should a valid and timely claim be received by the Administrator after the Final Approval Hearing in response to a cure letter from the Administrator, Class Counsel will inform the Court of any such claims.

[3] 19,142 divided by 667,584 equals .028673545201802. Converted to a percentage it equals 2.8673545201802%

claims rate was a "higher than average claims rate").

### C.   MONETARY RELIEF

The Settlement provides for a non-reversionary Settlement Fund of $2,670,336.00, with the amount of the Class Member claimant's individual award (to be issued by check) determined by their *pro rata* share of the net settlement.

After deducting the requested $667,584.00 for attorneys' fees (representing 25% of the Settlement Fund) (*see* Doc. No. 33), plus Class Counsel costs of $11,074.20[4] (Kazerounian Decl. ¶¶ 80, 83; Swigart Decl. ¶ 31.), the class representative service award of $5,000.00 (Doc. No. 21-1, Agreement § 5.03), and estimated administrative expenses of $362,164.84 (Steinhart Decl. ¶ 18), the remaining portion of the Settlement Fund is $1,624,512.96. Kazerounian Decl. ¶ 83 The estimated individual recovery to the approximately 19,147 Class Member claimants who submitted valid and timely claims, is approximately $84.84—which is more than quoted to class members in both the postcard and long-form notices (quoting $40.00-$80.00). *See* Doc. No. 21-1, pgs. 48, 54. Kazerounian Decl. ¶ 84.

### D.   CLASS RELEASE

Settlement Class Members who did not timely opt-out are bound by the Agreement, which is limited to the claims for automated and artificial/prerecorded calls to cell phones under the TCPA and similar laws. *See* Doc. No. 21-1, Agreement §§ 13.01-13.04.

---

[4] Costs of $11,074.20 are significantly less than the $25,000.00 that was requested in Plaintiff's Motion for Preliminary Approval and approved in the Court's Orders.  *See* Doc. No. 20, pg.14; Doc Nos. 28, 30, 32.

### E. ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

For the reasons more fully explained in Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award, filed on May 6, 2019 (Doc. No. 33), Class Counsel continue to believe that the request for attorneys' fees of $667,584.00 (representing 25% of the Settlement Fund)[5], Class Counsel costs of $11,074.20 (Kazerounian Decl. ¶ 80; Swigart Decl. ¶ 31), and the class representative service award of $5,000.00 (Doc. No. 21-1, Agreement § 5.03) should be granted. The request is made within the standards typical of TCPA class actions, it was preliminarily approved for Class Counsel to make the request, and there are no objections. Therefore, the Class supports this request.

## III. FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals." Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015); *see also, Connectivity Sys. Inc. v. Nat'l City Bank*, No. 08-cv-1119, 2011 WL 292008, at *1 (S.D. Ohio Jan. 26, 2011) ("This Court recognizes that settlement of class actions is generally favored and encouraged."); *In re Nationwide Fin. Servs. Litig.*, No. 08-cv-249, 2009 U.S. Dist. LEXIS 126962, at *3 (S.D. Ohio Aug. 18, 2009) (finding the law generally favors and encourages the settlement of class actions). Here, final approval should be granted, as it is in the best interests of the Class.

---

[5] Class Counsel's lodestar is now $178,795.50 at which, an attorneys' fees payment of 25% now results in a lodestar cross-check of Class Counsel's fees with a multiplier of approximately 3.7. *See* Kazerounian Decl. ¶ 79. Class Counsel will continue to incur attorneys' fees through final approval and any *cy pres* distribution as well.

**A.  THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED**

In order to Approve a class action settlement, the Court must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, Case No. 2:11-cv-1061, 2013 WL 2295880, at *4, 2013 U.S. Dist. LEXIS 74201, at *9 (S.D. Ohio May 24, 2013).  In the Sixth Circuit, the district courts consider the following factors in evaluating the fairness, adequacy and reasonableness of a proposed settlement: (1) the plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the class members; and (7) the public interest. *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.*, No. 13-cv-00489, 2015 WL 1976398, at *1-*2 (W.D. Ky. May 5, 2015). "'The district court enjoys wide discretion in assessing the weight and applicability of these factors.'" *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008) (*quoting Granada Inv. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

Based on the weight of these factors tilting toward approval, Plaintiff's

counsel respectfully submit that, for the reasons detailed below, the Court grant final approval of the Settlement as fair, reasonable and adequate. This request is not opposed by Defendant's counsel.

1. **The Plaintiff's Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in Settlement**

   a. *Liability is highly contested and both sides face significant challenges in litigating this case*

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 372 (*citing In re General Tire & Rubber Co. Sec. Litig.*, 726 F. 2d 1075, 1086 (6th Cir. 1984)). However, the Court "has no occasion to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." *Williams*, 720 F.2d at 921 (*citing Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981)). Rather, the focus is on "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *UAW v. General Motors Corp.*, No. 05-cv-73991, 2006 WL 891151, at *15 (E.D. Mich. Mar. 31, 2006) (*citing In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citations omitted)).

Class Counsel is confident that the class would prevail on the merits should the case proceed. However, U.S. Bank vigorously contests the claims asserted by Plaintiff in this Action. While both sides strongly believe in the merits of their

respective cases, there are risks to both sides in continuing the action. Class Counsel understands there are uncertainties associated with complex class action litigation and that no one can predict the outcome of the case.

Particularly, the relatively recent D.C. Circuit Court of Appeals decision in *ACA Int'l v. Fed. Commc'ns Comm'n*, has caused a shift in the case law as to what the definition of an Automatic Telephone Dialing System ("ATDS") is under the TCPA, and consequently, what machines qualify as ATDS. 885 F.3d 687 (D.C. Cir. 2018). Courts within the Sixth Circuit have taken conflicting approaches. *See Ammons v. Ally Fin., Inc.*, No. 3:17-CV-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018) (granting in part plaintiff's motion for summary judgment and holding that *ACA International* changed nothing as it relates to the definition of an ATDS as considered by FCC Orders from 2003 and 2008); *but see Gary v. TrueBlue, Inc.*, No. 17-CV-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018) (denying plaintiff's motion for summary judgment and finding the definition of an ATDS to be restricted to the statutory text, without consideration of subsequent FCC Orders). The uncertainty for both parties is significant, given the current landscape of TCPA litigation.

If the Action were to continue, challenges would likely be made by Defendant, thereby placing in doubt whether a class could prevail. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant Settlement Fund and the deterrent effects it would have. Kazerounian Decl.

¶ 27; Swigart Decl. ¶ 12. Similarly, U.S. Bank has to recognize that if a class is certified, the potential amount of damages could be substantially higher than the Settlement agreed upon here. The Settlement avoids that risk. Therefore, Defendant's counsel also seek to have the Court approve this Settlement. Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation as a class action for alleged violations of the TCPA.

      **b.**    ***Defendant's agreement to create a $2,670,336.00 Settlement Fund provides a fair and substantial benefit to the class***

"In evaluating the amount and form of relief offered in Settlement, the Court [should be] mindful of the notion that '[t]he determination of what constitutes a 'reasonable' settlement is not susceptible of a mathematical equation yielding a particularized sum. Rather . . . in any case, there is a range of reasonableness with respect to a settlement.'" *Amos v. PPG Indus., Inc.*, No. 2:05-CV-70, 2015 WL 4881459, at *3 (S.D. Ohio Aug. 13, 2015) (quoting *In re Broadwing*, 252 F.R.D. at 373). Indeed, settlements never result in the recovery of the full amount of alleged losses. *UAW*, 2006 WL 891151, at *17. Rather, a "just" settlement is generally "an arbitrary point between competing notions of reasonableness." *Id*. Here, "the court need not decide the amount of a potential recovery at trial, since the approval of the settlement should not involve a trial on the merits." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 373.

Although the TCPA provides for statutory damages of $500.00 for each negligent violation and $1,500.00 for each willful violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See, e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery).

The Settlement Fund in this case is derived by multiplying the total number of Class Members of 667,584 by a rate of $4.00 for a total settlement amount of $2,670,336.00. *See* Doc. No. 21-1, Agreement § 4.04. This is a substantial sum and is well within the market value for TCPA class settlements. *See Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290-BEN-NLS, 2013 WL 12095060 (S.D. Cal. June 21, 2013) (granting final approval a TCPA class action settlement of $2.00 per class member); *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (granting final approval of a TCPA class action

settlement of $2.85 per class member); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *5-6 (N.D. Ill. Feb. 27, 2015) (granting final approval of a TCPA class action settlement of $2.95 per class member); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval of a TCPA class action settlement of $2.72 per class member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (granting final approval of a TCPA class action settlement of $1.20 per class member); *Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (granting final approval of a TCPA class action settlement of approximately $1.00 per class member).

After the Settlement Costs are deducted, Class Members will be paid approximately $84.84[6]. *See* Section II.C. *supra*; Kazerounian Decl. ¶¶ 83, 84. This *pro rata* share per Class Member claimant is well within the range of TCPA class action settlement payments that have been approved across the country. *See, e.g., Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV, 2017 U.S. Dist. 13 LEXIS 217470, at *18 (S.D. Fla. Nov. 17, 2017) (finally approving "the Settlement Agreement [under the TCPA that] gave class members the option to choose a $4.00 cash award or a $15.00 voucher"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) (finally approving TCPA settlement where the individual settlement award was approximately $30.00); *In re Capital One Tel. Consumer Prot. Act*

---

[6] In both the postcard and long-form notices, Class Members were quoted that they may receive a possible settlement between $40-$80. *See See* Doc. No. 21-1, pgs. 48, 54. The present recovery is greater than expected for Class Members making a timely and valid claim.

*Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (awarding $34.60 per claiming class member); *Arthur v. Sallie Mae, Inc.*, 10-cv-0198-JLR (W.D. Wash.) (approving settlement where class members were to receive between $20 and $40 dollars per claim); *Wojcik v. Buffalo Bills Inc.*, No. 8:12-cv-02414-SDM-TBM (M.D. Fla. Aug. 25, 2014) (awarding a gift card valued at $57.50 to $75.00 per class member) [Doc. No. 57-4]; and *Jiffy Lube International, Inc. Text Spam Litigation*, 11-MD-02261-JM-JMA (S.D. Cal Feb. 20, 2013) (finally approving TCPA class settlement where class members received a single voucher for an oil change, valued at $20.00).

The *pro rata* cash share that each Class Member claimant will receive is fair, appropriate, and reasonable given the purposes of the TCPA—particularly in light of the anticipated risk, expense, and uncertainty of continued litigation—and, close to, but in excess of the initial amount contemplated in the class notices which was preliminary approved by the Court. *See* Doc. No. 21-1, pgs. 48, 54.

**2. The Complexities, Expense, and Likely Duration of Litigation Lends Toward Settlement**

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi*, 248 F.R.D. at 497. This is because "in general, 'most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Broadwing, Inc. ERISA Litig.*, 252

F.R.D. at 373 (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)). Courts in this Circuit have characterized class action trials as a "long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556 (S.D. Ohio 2000) (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998)).

Here, in the absence of settlement, the Parties would begin litigation once again in earnest. Defendant would then presumably request permission to brief and file a motion to dismiss based upon recent developments in case law as to the definition of an ATDS. *See* Section III.A.1.i *Supra.* If the case were to proceed beyond a motion to dismiss, extensive class discovery would ensue with significant data analysis necessary, given the total number of Class Members. The Parties would likely need to engage experts to address that issue of whether an ATDS was used by U.S. Bank, and to also analyze call and alleged consent data that would be sought from U.S. Bank as to the nationwide putative class claims. Indeed, it is not uncommon in TCPA class action litigation for the named plaintiff to seek discovery such as outgoing calls records, consent documentation, and expert testimony as to whether an ATDS was used.[7] Depositions and discovery motions would likely follow. This would all be necessary

---

[7] *See e.g.*, *Stemple v. QC Holdings, Inc.*, No. 12-cv-1997-CAB (WVG), 2013 U.S. Dist. LEXIS 99582 (S.D. Cal. June 17, 2013) (ordering production of outbound dial list and all alleged consent documentation prior to a motion for class certification); *Medina v. Enhanced Recovery Co., LLC*, No. 15-14342-CIV), 2017 U.S. Dist. LEXIS 186651 (S.D. Fla. Nov. 9, 2017) (ordering production of outbound dial records for putative class); *Shamblin v. Obama*, No. 8:13-cv-2428-T-33TBM, 2015 U.S. Dist. LEXIS 54849 (M.D. Fla. Apr. 27, 2015) (the plaintiff offered expert testimony in support of motion for class certification).

prior to bringing a motion for class certification and cross motions for summary judgment. And then, of course, there is the possibility of appeals.

As of approximately June 24, 2019, the litigation expenses incurred by Class Counsel amounted to $11,074.20 (Kazerounian Decl, ¶ 80; Swigart Decl. ¶ 31), and the expenses would likely dramatically increase through further class-related discovery, motion practice, and expert testimony.

Essentially, the Parties and the Court would face extremely burdensome litigation and expense without the settlement contemplated here.

### 3. The Stage of the Proceedings

While the proposed Settlement was reached at an early stage of the litigation, that does not weigh against final approval. Class Counsel and U.S. Bank put in the necessary work and investigation to properly evaluate the value of this case and to then reach a reasonable resolution.

Class Counsel adequately investigated U.S. Bank's pertinent business practices and the Plaintiff's TCPA claims. Class Counsel also conducted a through review of documentation and confirmatory discovery following mediation. *See Dillow*, 2018 WL 4776977, at *3 (granting final approval despite no depositions being conducted, because the pertinent facts were based upon the documentation at issue in the case).

Any concerns about the early stage of proceedings are allayed by the significant result of a non-reversionary $2,670,336.00 Settlement Fund for the

benefit of an estimated 667,584 Settlement Class Members nationwide, who were allegedly called on their cell phone without consent by U.S. Bank. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). Again, the settlement provides for relief now, instead of possible relief after much motion practice—including what would be a contested motion for class certification—years of litigation, the risk of trial, and emerging TCPA case law in the wake of *ACA International*.

### 4. Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to the Class

"In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi*, 248 F.R.D. at 498 (citing *Rankin v. Rots*, No. 02-CV-71045, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006)); *UAW*, 2006 WL 891151, at *18 (noting it is "well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs."); *Wess v. Storey*, No. 08-cv-623, 2011 WL 1463609, at *6 (S.D. Ohio April 14, 2011); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 375.

The Parties are represented by counsel experienced in complex class action litigation. Class Counsel have extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection and specifically the

TCPA. Kazerounian Decl. ¶¶ 34-70; Swigart Decl. ¶¶ 14-25; Chester Decl. ¶ 23-32. Similarly, Counsel for U.S. Bank has extensive experience based upon a long track record in complex class actions. They have vigorously defended U.S. Bank throughout the course of this Action. Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Class Members. Kazerounian Decl. ¶ 27; Swigart Decl. ¶ 12.  As indicated by U.S. Bank's response to the Motion for Preliminary Approval, U.S. Bank also supports the Settlement and wishes the Court to enter final approval. *See* Doc. No. 27.

**5.    The Settlement Was Reached As the Result of Arm's Length Negotiation, Without Collusion, with a Neutral, Third-Party Facilitating a Mediation**

"Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion." *In re Delphi*, 248 F.R.D. at 501 (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1018 (S.D. Ohio 2001)); *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair."); *see also Newberg* § 11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

The proposed Settlement is the result of a series of spirited arm's length negotiations, including an all-day mediation sessions with Mr. Bruce Friedman, Esq.,

and subsequent confirmatory discovery. Kazerounian Decl. ¶¶ 3, 4. With the guidance of Mr. Friedman, the Parties were able to reach a Settlement. *See* Doc. No. 21-1, Agreement §§ 1.04-1.05; Kazerounian Decl. ¶ 3. Informal discovery was provided to Class Counsel and later, after settlement, confirmatory discovery was conducted by the parties. *See* Kazerounian Decl. ¶¶ 4, 13. Confirmatory discovery verified the parameters of the broader Class and the number of cell phones called making up the number of Class Members. *See* Kazerounian Decl. ¶¶ 13, 14.

With counsel for both sides also participating, there were several conference calls to go over methodology, databases used, technical details of database searches and other questions related to the parameters of the Settlement Class and how the number of cell phones called was determined. Kazerounian Decl. ¶¶ 4, 12. Plaintiff's counsel are satisfied the information provided about the number of persons in the Settlement Class and the number of cell phones called is correct. Kazerounian Decl. ¶¶ 6, 12. Furthermore, after reaching an agreement in principle at mediation to settle the case, the Parties' counsel engaged in extensive discussions for several more months. These discussions were necessary to work out the many details of the Settlement including: data production, total number of Class Members, the claims process and notice procedures. Kazerounian Decl. ¶¶ 4, 6. The time and effort spent on settlement negotiations, as well the time spent in mediation, and in developing the discovery protocol for the sampling of data in the settlement process, militate in favor of final approval of the proposed Settlement, as they strongly indicate there was no collusion.

### 6. There are No Current Objections to the Settlement and Only a Small Number of Requests for Exclusion

As noted in Section II.B.1. s*upra*, there are no current objections to the Settlement. *See* Stienhart Decl. ¶ 11. The 58 timely requests for exclusion represent less than .0087% of the 667,584 Settlement Class Members. As such, there is virtually no opposition to the Settlement, which favors final approval. *See Hainey*, 617 F.Supp. 2d at 675; *see also Dillow*, 2018 WL 4776977, at *6 (no objections filed weighs in the favor of approval); *Fernandez v. Vict. Secret Stores, LLC*, 2008 U.S. Dist. LEXIS 123546, *48 (C.D. Cal. July 21, 2008) ("Only three class members objected and only twenty-nine opted out. This indicates that counsel achieved a favorable result for the class, which in turn suggests that they are entitled to a generous fee").

### 7. This Settlement is in the Public Interest

"Public policy favors settlement of class action lawsuits." *Dillow*, 2018 WL 4776977, at *4 (citing *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *4 (S.D. Ohio July 11, 2014); *see also Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). This case is a prime example of the utility of a class action settlement to address the complexities of hundreds of thousands of possible claims in a expeditious and monetarily satisfying way for Settlement Class Members. Moreover, private lawsuits such as this Action are necessary to effectuate the remedial purposes of the TCPA in protecting consumers from the abusive autodialing practices of companies.

Therefore, final approval of this class action settlement should be granted.

## IV.    REQUEST FOR APPROVAL OF *CY PRES* BENEFICIARY

Pursuant to the Agreement, unclaimed settlement funds after the first distribution will be distributed to claimants who cashed their first settlement check as long as there are sufficient funds to pay each eligible recipient $1.00 by check and then to *cy pres* beneficiaries approved by the Court. Doc. No. 21-1, Agreement § 7.04.

"[T]he term *cy pres* has generally referred to an effort to provide unclaimed compensatory funds to a charitable interest that is in some way related to either the subject of the case or the interests of the victims, broadly defined." Martin H. Redish et. al., *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617, 620 (2010). The doctrine of *cy pres* allows a court to distribute unclaimed portions of a class action settlement fund to the "next best" class of beneficiaries. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307–08 (9th Cir. 1990).

"A *cy pres* award is 'used to distribute unclaimed portions of a class-action judgment or settlement funds to a charity that will advance the interests of the class.'" *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, fn. 3 (6th Cir. 2016) (quoting Black's Law Dictionary (10th ed. 2014)).  Specifically, in this case, a *cy pres* distribution will only be possible if Class Members who timely made claims and were sent checks did not cash those checks for 210 days. *See* Doc. No. 21-1, Agreement § 7.04. Courts in this district routinely approve the distribution of un-

cashed checks to *cy pres* beneficiaries. *See*, *e.g.*, *Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160, 166 (S.D. Ohio 2014) (approving *cy prep* distributions to the National Consumer Law Center and the Ohio Legal Assistance Foundation); *Kritzer v. Safelite Solutions, LLC*, No. 2:10–cv–729, 2012 WL 1945144, at \*10 (S.D. Ohio May 30, 2012) (approving distribution of uncashed settlement checks to *cy pres* beneficiaries).

Plaintiff requests that the Court approve as a contingent *cy pres* beneficiary Habitat for Humanity pursuant to Section 7.04(f) of the Agreement. In addition to the Agreement, the Court retains its traditional equitable powers in determining the method in which to distribute settlement funds. *Powell v. Georgia-Pacific Corp.*, 843 F. Supp. 491, 495 (W.D. Ark. Jan. 31, 1995); *see also, Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978). The Settlement Class was informed of the proposed, contingent *cy pres* beneficiaries through the long-form notice. *See* Doc. No. 21-1, pg. 47.

## A.    THE NATURE OF THE LAWSUIT AND INTERESTS OF THE SETTLEMENT CLASS MEMBERS

This lawsuit was brought to obtain statutory damages for alleged violations of the TCPA, on behalf of Plaintiff and a putative class of persons who received collection telephone calls on their cellular telephone from U.S. Bank in an attempt to collect a debt upon a mortgage or a home equity line of credit. *See* Doc. No. 1.

The interests of the silent class members would be advanced through a *cy pres* award of unclaimed funds (if any) to Habitat for Humanity. "Habitat for Humanity is a global nonprofit housing organization working in local communities

across all 50 states in the U.S. and in approximately 70 countries." *See* https://www.habitat.org/about. "Habitat's vision is of a world where everyone has a decent place to live." *See id.* Specifically, "Habitat for Humanity homeowners help build their own homes alongside volunteers *and pay an affordable mortgage*." *See* https://www.habitat.org/about/mission-and-vision (emphasis added).

The Settlement Class Members in this case received calls from U.S. Bank specifically to collect a debt on their homes. Providing a *cy pres* award to an entity that builds houses for families in need of decent and affordable housing with affordable mortgages helps prevent additional families from finding themselves at the end of future collection calls. Therefore, Habitat for Humanity is an appropriate *cy pres* award recipient of residual settlement funds—should any exist—in this Action.

## V. CONCLUSION

For all the foregoing reasons, Plaintiff and Class Counsel respectfully request that the Court grant the Motion for Final Approval of the Settlement because (1) the factors courts consider weigh in the favor of approval, (2) there are no objections to the Settlement, and (3) the *pro rata* share to each Class Member who made a valid and timely claim is actually greater than anticipated in the notice. Further, Plaintiff and Class Counsel request that the Court approve Habitat for Humanity as the contingent *cy pres* beneficiary. A proposed order is filed herewith.

Respectfully Submitted,

Date: June 24, 2019                By: /s/ Abbas Kazerounian
                                        Abbas Kazerounian
                                        **KAZEROUNI LAW GROUP**
        245 Fischer Avenue, Unit D1
        Costa Mesa, CA 92626
        Telephone:  (800) 400-4808 Ext. 2
        Facsimile:   (800) 520-5523
        Email: ak@kazlg.com

Date: June 24, 2019        By: /s/ Joshua B. Swigart
        Joshua B. Swigart
        **HYDE & SWIGART**
        2221 Camino Del Rio South, Suite 101
        San Diego, CA 92108
        Telephone:  (619) 233-7770
        Facsimile:   (619) 297-1022
        Email: josh@westcoastlitigation.com

Date: June 24, 2019        By: /s/ Anthony P. Chester
        Anthony P. Chester
        **HYDE & SWIGART**
        120 South 6th Street, Suite 2050
        Minneapolis, MN 55402
        Telephone:  (952) 225-5333
        Facsimile:   (800) 635-6425
        Email: tony@westcoastlitigation.com

Date: June 24, 2019        By: /s/ W. Mark Jump
        W. Mark Jump
        **JUMP LEGAL GROUP**
        2130 Arlington Avenue
        Columbus, OH 43221
        Telephone:  (614) 481-7216
        Facsimile:   (866) 334-2208
        Email: wmjump@jumplegal.com

        *Attorneys for Plaintiff Virginia Guiette*